MARKMAN, J.
We granted leave to appeal in these two cases to consider whether plaintiffs’ proposed expert witnesses are qualified under MCL 600.2169(1) to give expert testimony on the appropriate standards of medical practice or care. The trial courts in both cases ruled that plaintiffs’ expert witnesses are not qualified under § 2169(1). In Woodard, the Court of Appeals affirmed the trial court’s ruling on this issue, and, in Hamilton, the Court of Appeals reversed the trial court’s decision. We conclude that the trial courts did not abuse their discretion in concluding that plaintiffs’ proposed expert witnesses are not qualified under § 2169(1). Therefore, *554 in Woodard, we affirm the part of the Court of Appeals judgment that held that plaintiffs’ proposed expert is not qualified and remand to the trial court for reentry of its order dismissing plaintiffs’ claim with prejudice. In Hamilton, we reverse the Court of Appeals judgment and remand to the trial court for reentry of its order granting a directed verdict to defendant.[1]
I. FACTS AND PROCEDURAL HISTORY
A. WOODARD v CUSTER
We summarized the facts underlying this case in our recent decision in Woodard v Custer, 473 Mich 1, 3-5; 702 NW2d 522 (2005) (Woodard I):
Plaintiffs’ fifteen-day-old son was admitted to the Pediatric Intensive Care Unit (PICU) at the University of Michigan Hospital, where he was treated for a respiratory problem. During his stay in the PICU, he was under the care of Dr. Joseph R. Custer, the Director of Pediatric Critical Care Medicine. When the infant was moved to the general hospital ward, physicians in that ward discovered that both of the infant’s legs were fractured. Plaintiffs sued Dr. Custer and the hospital, alleging that the fractures were the result of negligent medical procedures, namely, the improper placement of an arterial line in the femoral vein of the infant’s right leg and the improper placement of a venous catheter in the infant’s left leg.
Defendant physician is board-certified in pediatrics and has certificates of special qualifications in pediatric critical care medicine and neonatal-perinatal medicine. Plaintiffs’ proposed expert witness, who signed plaintiffs’ affidavit of *555 merit, is board-certified in pediatrics, but does not have any certificates of special qualifications.
Before discovery, the trial court denied defendants’ motion for summary disposition, concluding that plaintiffs’ attorney had a “reasonable belief” under MCL 600.2912d(l) that plaintiffs’ proposed expert witness was qualified under MCL 600.2169 to testify against the defendant physician, and, thus, that plaintiffs’ affidavit of merit was sufficient. After discovery, the trial court granted defendants’ motion to strike plaintiffs’ expert witness on the basis that he was not actually qualified under MCL 600.2169 to testify against the defendant physician. The trial court dismissed plaintiffs’ claim with prejudice, concluding that plaintiffs could not reach a jury without expert testimony.
The Court of Appeals affirmed the trial court’s ruling that plaintiffs’ proposed expert witness was not qualified under MCL 600.2169 to testify against the defendant physician (Judge BORRELLO dissented on this issue), hut reversed the trial court’s dismissal on the basis that expert testimony was unnecessary under the doctrine of res ipsa loquitur, i.e., an inference of negligence may be drawn from the fact that the infant was admitted to the PICU with healthy legs and discharged from the PICU with fractured legs (Judge Talbot dissented on this issue). Unpublished opinion per curiam, issued October 21, 2003 (Docket Nos. 239868-239869). The case was remanded for trial.
Defendants sought leave to appeal the Court of Appeals decision that res ipsa loquitur applies and that expert testimony was not necessary. Plaintiffs sought leave to cross-appeal the Court of Appeals decision that their proposed expert witness was not qualified under MCL 600.2169 to testify against the defendant physician. We heard oral argument on whether to grant the applications or take other peremptory action permitted by MCR 7.302(G)(1). 471 Mich 890 (2004).
In Woodard I, we addressed defendants’ application for leave to appeal and held that expert testimony is necessary in this case. At the same time, we granted plaintiffs’ cross-application for leave to appeal to ad *556 dress whether plaintiffs’ proposed expert witness is qualified under MCL 600.2169(1), which is the subject of the instant opinion. 473 Mich 856 (2005).[2]
B. HAMILTON v KULIGOWSKI
Plaintiff alleges that the defendant physician failed to properly diagnose and treat the decedent while she exhibited prestroke symptoms. The defendant physician is board certified in general internal medicine and specializes in general internal medicine. Plaintiffs proposed expert witness is board certified in general internal medicine and devotes a majority of his professional time to treating infectious diseases, a subspecialty of internal medicine. The trial court granted defendant’s motion for a directed verdict on the basis that plaintiffs expert is not qualified to testify against the defendant physician because plaintiffs expert specializes in infectious diseases and did not devote a majority of his professional time to practicing or teaching general internal medicine. The Court of Appeals reversed, concluding that plaintiffs expert is qualified to testify against the defendant physician because both plaintiffs *557 proposed expert witness and the defendant physician specialize in internal medicine and because plaintiffs proposed expert did devote a majority of his professional time to the practice of internal medicine given that the treatment of infectious diseases is a subspecialty of internal medicine. 261 Mich App 608; 684 NW2d 366 (2004). We granted defendant’s application for leave to appeal. 473 Mich 858 (2005).[3]
II. standard of review
These cases both involve the interpretation of MCL 600.2169(1). This Court reviews questions of statutory interpretation de novo. Halloran v Bhan, 470 Mich 572, 576; 683 NW2d 129 (2004). However, this Court reviews a trial court’s rulings concerning the qualifications of proposed expert witnesses to testify for an abuse of discretion. Cox v Flint Bd of Hosp Managers, 467 Mich 1, 16 n 16; 651 NW2d 356 (2002). An abuse of discretion occurs when the decision results in an outcome falling outside the principled range of outcomes. Novi v Robert Adell Children’s Funded Trust, 473 Mich 242, 254; 701 NW2d 144 (2005).
III. ANALYSIS
MCL 600.2169 provides, in pertinent part:
(1) In an action alleging medical malpractice, a person shall not give expert testimony on the appropriate standard *558 of practice or care unless the person is licensed as a health professional in this state or another state and meets the following criteria:
(a) If the party against whom or on whose behalf the testimony is offered is a specialist, specializes at the time of the occurrence that is the basis for the action in the same specialty as the party against whom or on whose behalf the testimony is offered. However, if the party against whom or on whose behalf the testimony is offered is a specialist who is hoard certified, the expert witness must be a specialist who is board certified in that specialty.
(b) Subject to subdivision (c), during the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to either or both of the following:
(i) The active clinical practice of the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed and, if that party is a specialist, the active clinical practice of that specialty.
Cii) The instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed and, if that party is a specialist, an accredited health professional school or accredited residency or clinical research program in the same specialty. [Emphasis added.][4]
A. MOST RELEVANT SPECIALTY AND BOARD CERTIFICATION
Although specialties and board certificates must match, not all specialties and board certificates must match. Rather, § 2169(1) states that “a person shall not give expert testimony on the appropriate standard of *559 practice or care unless ... (Emphasis added.) That is, § 2169(1) addresses the necessary qualifications of an expert witness to testify regarding the “appropriate standard of practice or care,” not regarding an inappropriate or irrelevant standard of medical practice or care. Because an expert witness is not required to testify regarding an inappropriate or irrelevant standard of medical practice or care, § 2169(1) should not be understood to require such witness to specialize in specialties and possess board certificates that are not relevant to the standard of medical practice or care about which the witness is to testify. As this Court explained in McDougall v Schanz, 461 Mich 15, 24-25; 597 NW2d 148 (1999), “[MCL 600.2169(1)] operates to preclude certain witnesses from testifying solely on the basis of the witness’ lack of practice or teaching experience in the relevant specialty.” (Emphasis added.)
Further, § 2169(1) refers to “the same specialty” and “that specialty.” It does not refer to “the same specialties” and “those specialties.” That is, § 2169(1) requires the matching of a singular specialty, not multiple specialties. As the Court of Appeals explained in Tate v Detroit Receiving Hosp, 249 Mich App 212, 218; 642 NW2d 346 (2002), “the statute expressly uses the word ‘specialty,’ as opposed to ‘specialties,’ thereby implying that the specialty requirement is tied to the occurrence of the alleged malpractice and not unrelated specialties that a defendant physician may hold.”
Moreover, § 2169(l)(b) requires the plaintiffs expert to have “during the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to either” the “active clinical practice” or the “instruction of students” in “the same specialty” as the *560 defendant physician.[5] (Emphasis added.) Obviously, a specialist can only devote a majority of his professional time to one specialty. Therefore, it is clear that § 2169(1) only requires the plaintiffs expert to match one of the defendant physician’s specialties. Because the plaintiffs expert will be providing expert testimony on the appropriate or relevant standard of practice or care, not an inappropriate or irrelevant standard of practice or care, it follows that the plaintiffs expert witness must match the one most relevant standard of practice or care — the specialty engaged in by the defendant physician during the course of the alleged malpractice, and, if the defendant physician is board certified in that specialty, the plaintiffs expert must also be board certified in that specialty.
B. SAME SPECIALTY REQUIREMENT
The first requirement of § 2169(l)(a) is that “[i]f the party against whom or on whose behalf the testimony is offered is a specialist, [the expert witness must have] specialize^] at the time of the occurrence that is the basis for the action in the same specialty as the party against whom or on whose behalf the testimony is offered.” That is, if a defendant physician is a specialist, the plaintiffs expert witness must have specialized in *561 the same specialty as the defendant physician at the time of the alleged malpractice.
MCL 600.2169(1) does not define the term “specialty.” “We may consult dictionary definitions of terms that are not defined in a statute.” People v Perkins, 473 Mich 626, 639; 703 NW2d 448 (2005). “[T]echnical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.” MCL 8.3a. Because § 2169(1) pertains to “actions[s] alleging medical malpractice” and because the term “specialty” may have acquired a “peculiar and appropriate meaning” in the medical field, it is appropriate to look to medical dictionaries to define the term “specialty.” (Emphasis added.)
Dorland’s Illustrated Medical Dictionary (28th ed) defines a “specialist” as “a physician whose practice is limited to a particular branch of medicine or surgery, especially one who, by virtue of advanced training, is certified by a specialty board as being qualified to so limit his practice.” MCL 600.2169(l)(a) requires the plaintiff’s expert to specialize in the same specialty as the defendant physician, and, if the defendant physician is “a specialist who is board certified, the expert witness must be a specialist who is board certified in that specialty.” (Emphasis added.) Both the dictionary definition of “specialist” and the plain language of § 2169(l)(a) make it clear that a physician can be a specialist who is not board certified. They also make it clear that a “specialist” is somebody who can potentially become board certified. Therefore, a “specialty” is a particular branch of medicine or surgery in which one can potentially become board certified. Accordingly, if the defendant physician practices a particular branch of medicine or surgery in which one can potentially be *562 come board certified, the plaintiffs expert must practice or teach the same particular branch of medicine or surgery.
Plaintiffs argue that § 2169(l)(a) only requires their expert witnesses to have specialized in the same specialty as the defendant physician, not the same subspecialty. We respectfully disagree. As explained above, “specialty” is defined as a particular branch of medicine or surgery in which one can potentially become board certified. Moreover, “sub” is defined as “a prefix. .. with the meanings ‘under,’ ‘below,’ ‘beneath’. .. ‘secondary,’ ‘at a lower point in a hierarchy[.]’ ” Random House Webster’s College Dictionary (1997). Therefore, a “subspecialty” is a particular branch of medicine or surgery in which one can potentially become board certified that falls under a specialty or within the hierarchy of that specialty. A subspecialty, although a more particularized specialty, is nevertheless a specialty. Therefore, if a defendant physician specializes in a subspecialty, the plaintiffs expert witness must have specialized in the same subspecialty as the defendant physician at the time of the occurrence that is the basis for the action.[6]
C. SAME BOARD CERTIFICATE REQUIREMENT
The next requirement of § 2169(l)(a) is that “if the party against whom or on whose behalf the testimony is offered is a specialist who is board certified, the expert witness must be a specialist who is board certified in that specialty.” As we recently explained in Halloran, supra at 574, “MCL 600.2169(l)(a) requires that the proposed expert witness must have the same board *563 certification as the party against whom or on whose behalf the testimony is offered.”
Plaintiffs argue that the definition of “board certified” found in the Public Health Code should apply here. We respectfully disagree. The Public Health Code, MCL 333.2701(a), defines “board certified” as “certified to practice in a particular medical specialty by a national board recognized by the American board of medical specialties or the American osteopathic association.” However, the Legislature specifically limited the use of the Public Health Code’s definition of “board certified” to the Public Health Code by stating, “As used in this part.. . ‘[b]oard certified’ means . ...” MCL 333.2701(a) (emphasis added). The statute at issue here, MCL 600.2169(1), is part of the Revised Judicature Act, not the Public Health Code, and, thus, the Public Health Code’s definition of “board certified” does not apply to the statute at issue here.[7]
Moreover, the Legislature has defined “board certified” differently in other statutes. Therefore, even if we thought it appropriate to borrow another statute’s definition of “board certified,” the definition would vary depending on which statute’s definition was borrowed. For instance, the Legislature has defined “board certified” in the Insurance Code, MCL 500.2212a(4), as “certified to practice in a particular medical or other health professional specialty by the American board of medical specialties or another appropriate national health professional organization.” Plaintiffs fail to explain why we should choose the Public Health Code’s *564 definition over the Insurance Code’s definition. We also note that the Legislature limited the Insurance Code’s definition of “board certified” to the Insurance Code by stating, “As used in this section, ‘board certified’ means ....” Id. (emphasis added). Because the statute at issue here is part of the Revised Judicature Act, not the Insurance Code, the Insurance Code’s definition does not apply to the statute at issue here. Since the Legislature has not defined “board certified” in the statute at issue here, we instead look to the medical dictionary definition of “board certified.” Perkins, supra at 639.
Taber’s Cyclopedic Medical Dictionary (18th ed) defines “certification” as “a legal document prepared by an official body that indicates a person or institution has met certain standards, or that a person has completed a prescribed course of instruction or training.” Similarly, Gould Medical Dictionary (3d ed) defines “certification” as “[a] statement by an officially recognized and legally constituted body, such as a medical board, that a person or institution has met or complied with certain standards of excellence.” Therefore, we conclude that to be “board certified” within the meaning of § 2169(1) (a) means to have received certification from an official group of persons who direct or supervise the practice of medicine that provides evidence of one’s medical qualifications.[8] Accordingly, if a defendant physician has received certification from a medical organization to this effect, the plaintiffs expert witness must also have obtained the same certification in order to be qualified to testify concerning the appropriate standard of medical practice or care.
*565 Plaintiffs argue that a certificate of special qualifications[9] is not a board certificate. We respectfully disagree. Contrary to plaintiffs’ assertion, nothing in § 2169(l)(a) limits the meaning of board certificate to certificates in the 24 primary medical specialties recognized by the American Board of Medical Specialties or the 18 primary medical specialties recognized by the American Osteopathic Association. Because a certificate of special qualifications is a document from an official organization that directs or supervises the practice of medicine that provides evidence of one’s medical qualifications, it constitutes a board certificate. Accordingly, if a defendant physician has received a certificate of special qualifications, the plaintiffs expert witness must have obtained the same certificate of special qualifications in order to be qualified to testify under § 2169(l)(a).[10]
D. SAME PRACTICE/MSTRUCTION REQUIREMENT
MCL 600.2169(1)(b) provides that if the defendant physician is a specialist, the expert witness must have “during the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to either .. . the active clinical practice of that specialty [or] [t]he instruction of students in an . . . accredited health professional school or accredited residency or clinical research program in the same specialty.”[11] Once *566 again the statute refers to “the same specialty” and “that specialty,” implying that only a single specialty must be matched. In addition, § 2169(l)(b) requires the plaintiffs expert to have “devoted a majority of his or her professional time” to practicing or teaching the specialty in which the defendant physician specializes. As we explained above, one cannot devote a “majority” of one’s professional time to more than one specialty. Therefore, in order to be qualified to testify under § 2169(l)(b), the plaintiffs expert witness must have devoted a majority of his professional time during the year immediately preceding the date on which the alleged malpractice occurred to practicing or teaching the specialty that the defendant physician was practicing at the time of the alleged malpractice, i.e., the one most relevant specialty.[12]
E. RESPONSE TO CHIEF JUSTICE TAYLOR’S CONCURRENCE
Chief Justice TAYLOR’s concurrence concludes that unless the defendant physician himself concedes that not all of his specialties are relevant, the plaintiffs expert must match all of the defendant physician’s *567 specialties. However, because the concurrence recognizes that it would be impossible to obtain an expert witness who devotes a majority of his professional time to all of the defendant physician’s specialties, see § 2169(l)(b) and part III(D) of this opinion, the concurrence concludes that the plaintiff can simply employ multiple experts to satisfy the requirements of § 2169(1). That is, a single expert does not have to satisfy all of the requirements of § 2169(1), as long as a group of experts collectively satisfy these requirements. We respectfully disagree.
MCL 600.2169(1) states, “a person shall not give expert testimony on the appropriate standard of practice or care unless the person is licensed as a health professional in this state or another state and meets the following criteria....” (Emphasis added.) That is, § 2169(1) states that a person cannot testify unless that person meets all of the requirements of § 2169(1). If that person does not meet all of the requirements of § 2169(1), that person cannot testify.[13] For the reasons discussed above, we conclude that the plaintiffs expert does not have to match all of the defendant physician’s *568 specialties; rather, the plaintiffs expert only has to match the one most relevant specialty.
Not only is the approach of Chief Justice TAYLOR’s concurrence contrary to the requirements of the statute, it is also an approach that we believe would be unworkable in the real world. Under the concurrence’s approach, if the defendant physician specializes in five specialties, for example, and refuses to concede that not all of these specialties are relevant to the alleged malpractice, the plaintiff would be required to present five expert witnesses to testify. Not only would this be extraordinarily burdensome for the plaintiff, it would also be extraordinarily burdensome for the trier of fact by infecting the entirety of the trial process with irrelevant, distracting, and confusing arguments.[14]
The concurrence by Chief Justice TAYLOR accuses the majority of “misunderstanding] completely the traditional roles played by the judge and jury in the trial process.” Post at 619. However, we believe that it is the concurrence that misunderstands these roles. Typically, the trial court allows the parties to introduce relevant *569 evidence and does not allow the parties to introduce irrelevant evidence. See MRE 402, which provides, “All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Michigan, these rules, or other rules adopted by the Supreme Court. Evidence which is not relevant is not admissible.” Under the concurrence’s approach, however, the parties would effectively be required to present irrelevant evidence, potentially a great amount of such evidence. And, instead of the trial court itself reviewing the evidence to determine what is and what is not relevant, the trier of fact would be required to do so.[15]
Requiring the admission of irrelevant evidence would not only be a waste of time and limited judicial resources, it would also cause enormous confusion and *570 distraction for the fact-finder. For instance, if the defendant physician claims to specialize in dermatology, internal medicine, plastic surgery, pediatrics, and urology and he negligently prescribes an adult dosage of amoxicillin to a three-year-old child suffering from an ear infection, under the majority’s approach, the plaintiffs expert would have to specialize in pediatrics. However, under the approach of Chief Justice Taylor’s concurrence, the plaintiffs phalanx of experts would have to specialize in dermatology, internal medicine, plastic surgery, pediatrics, and urology. That is, instead of the jury hearing testimony regarding the relevant specialty of pediatrics, the jury would be required also to endure testimony regarding the irrelevant specialties of dermatology, internal medicine, plastic surgery, and urology. To require the jury to hear such irrelevant testimony would confuse the jury and distract it from evaluating the relevant legal issues. Because this is not how the trial process is typically conducted in Michigan, and because the statute does not require trials to be conducted in such a confusing manner, we refuse to impose such a requirement upon the process.
The concurrence by Chief Justice TAYLOR contends that we are giving the trial court “a power of theory preclusion... heretofore unknown in our jurisprudence.” Post at 618-619. First, whether expert testimony is described as a “theory” or evidence supporting a theory, testimony regarding a specialty that was not being practiced at the time of the alleged malpractice is irrelevant, and, thus, inadmissible. In other words, irrelevant expert testimony does not magically become relevant and admissible simply by calling it a “theory.” To use the concurrence’s collapsed building hypothetical, the defendant architect would obviously be able to introduce relevant evidence of an earthquake. However, *571 he would not be able to introduce irrelevant evidence of an earthquake, for instance, evidence that an earthquake occurred years after the building collapsed in a country half way around the world. That is, the defendant architect is not precluded from introducing relevant theories, i.e., that the building collapsed because an earthquake occurred that same day in a neighboring city, but he is precluded from introducing irrelevant theories, i.e., that the building collapsed because an earthquake occurred years after the building collapsed in a country half way around the world.
Second, our holding that relevant expert testimony is admissible and irrelevant expert testimony is inadmissible is hardly a novel holding. As we have explained, it has always been the trial court’s job to facilitate the introduction of relevant evidence and to preclude the introduction of irrelevant evidence.[16] We are aware of no precedent that would require all irrelevant specialties *572 to match, or that would countenance a phalanx of experts, each of whom would be charged with testifying about a different irrelevant specialty. As the concurrence by Chief Justice TAYLOR itself recognizes, it is they, not the majority, that are advocating a change in the status, because the Court of Appeals in Tate held that irrelevant specialties do not have to match. The horror stories predicted by the concurrence upon the adoption of the majority position simply have not been borne out under Tate. Moreover, we note that none of the parties in these two cases argued that irrelevant specialties and board certificates must match, and none of the parties or the amici curiae argued in favor of the approach adopted by Chief Justice Taylor’s concurrence.
Further, we note that just because an expert is qualified under § 2169(1) does not mean that the trial court cannot disqualify the expert on other grounds. MCL 600.2169(2) provides:
In determining the qualifications of an expert witness in an action alleging medical malpractice, the court shall, at a minimum, evaluate all of the following:
(a) The educational and professional training of the expert witness.
(b) The area of specialization of the expert witness.
(c) The length of time the expert witness has been engaged in the active clinical practice or instruction of the health profession or the specialty.
(d) The relevancy of the expert witness’s testimony.
In addition, MCL 600.2169(3) specifically states, “[t]his section does not limit the power of the trial court to disqualify an expert witness on grounds other than the qualifications set forth in this section.” MCL 600.2955 provides:
*573 (1) In an action for the death of a person or for injury to a person or property, a scientific opinion rendered by an otherwise qualified expert is not admissible unless the court determines that the opinion is reliable and will assist the trier of fact. In making that determination, the court shall examine the opinion and the basis for the opinion, which basis includes the facts, technique, methodology, and reasoning relied on by the expert, and shall consider all of the following factors:
(a) Whether the opinion and its basis have been subjected to scientific testing and replication.
(b) Whether the opinion and its basis have been subjected to peer review publication.
(c) The existence and maintenance of generally accepted standards governing the application and interpretation of a methodology or technique and whether the opinion and its basis are consistent with those standards.
(d) The known or potential error rate of the opinion and its basis.
(e) The degree to which the opinion and its basis are generally accepted within the relevant expert community. As used in this subdivision, “relevant expert community” means individuals who are knowledgeable in the field of study and are gainfully employed applying that knowledge on the free market.
(f) Whether the basis for the opinion is reliable and whether experts in that field would rely on the same basis to reach the type of opinion being proffered.
(g) Whether the opinion or methodology is relied upon by experts outside of the context of litigation.
(2) A novel methodology or form of scientific evidence may be admitted into evidence only if its proponent establishes that it has achieved general scientific acceptance among impartial and disinterested experts in the field.
*574 (3) In an action alleging medical malpractice, the provisions of this section are in addition to, and do not otherwise affect, the criteria for expert testimony provided in section 2169.
Finally, MRE 702 further provides:
If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.
Therefore, even when a proffered expert meets the criteria contained in § 2169(1), the expert is subject to further scrutiny under § 2169(2), § 2169(3), § 2955, and MRE 702.[17]
Moreover, if a defendant believes that the plaintiffs expert is not qualified because he does not specialize in what the defendant believes to be the relevant specialty, the defendant can file a motion to strike the plaintiffs expert. If the trial court denies that motion, the defendant can then, of course, appeal that decision. The defendant can either file an interlocutory appeal or he can wait until the jury renders a verdict to file an application for leave to appeal. Either way, the defendant can certainly preserve the issue for appeal by objecting to the plaintiffs expert’s testimony on the *575 basis that the expert is not qualified because he does not specialize in the relevant specialty. At this point, the defendant should make clear what he thinks the relevant specialty is and why he thinks such is the relevant specialty.[18]
IV APPLICATION
A. WOODARD v CUSTER
The defendant physician is the director of pediatric critical care medicine at the University of Michigan Hospital, and specializes in pediatric critical care medicine. “Pediatrics” is “[t]he medical specialty concerned with the study and treatment of children in health and disease during development from birth through adolescence.” Stedman’s Medical Dictionary (26th ed). “Critical” is defined as “[d]enoting a morbid condition in which death is possible.” Id. Pediatric critical care medicine is the branch of medicine concerned with the care of children who are critically ill. Plaintiffs claim that an arterial line was improperly placed in the femoral vein of the infant patient’s right leg and that a venous catheter was improperly placed in the infant patient’s left leg while the infant was a patient in the defendant hospital’s pediatric intensive care unit. There is no question that the infant patient was critically ill when these procedures were performed. For *576 these reasons, we conclude that the trial court did not abuse its discretion in finding that the defendant physician was practicing pediatric critical care medicine at the time of the alleged malpractice, and, thus, pediatric critical care medicine is the one most relevant specialty.[19] Plaintiffs’ proposed expert witness undeniably did not specialize in pediatric critical care medicine at the time of the alleged malpractice and has never specialized in pediatric critical care medicine. Therefore, plaintiffs’ proposed expert witness does not satisfy the same specialty requirement of § 2169(l)(a).[20]
*577 The defendant physician is board certified in pediatric critical care medicine, and, as explained above, pediatric critical care medicine is the one most relevant specially. Plaintiffs’ proposed expert witness is not board certified in pediatric critical care medicine. Therefore, plaintiffs’ proposed expert witness does not satisfy the same board certificate requirement of § 2169(l)(a).
As explained above, the defendant physician specializes in pediatric critical care medicine and pediatric critical care medicine is the one most relevant specially. During the year immediately preceding the alleged malpractice, plaintiffs’ proposed expert witness did not practice or teach pediatric critical care medicine.[21] Therefore, plaintiffs’ proposed expert witness also does not satisfy the same practice/instruction requirement of § 2169(l)(b).
For these reasons, the trial court did not abuse its discretion in concluding that plaintiffs’ proposed expert witness is not qualified to testify on the appropriate standard of practice or care under § 2169(1). Because plaintiffs failed to present an expert qualified under § 2169(1) to testify with regard to the appropriate standard of practice or care, the trial court properly dismissed plaintiffs’ claim with prejudice.
B. HAMILTON v KULIGOWSKI
The defendant physician specializes in general internal medicine and was practicing general internal medi *578 cine at the time of the alleged malpractice. During the year immediately preceding the alleged malpractice, plaintiffs proposed expert witness did not devote a majority of his time to practicing or teaching general internal medicine. Instead, he devoted a majority of his professional time to treating infectious diseases. As he himself acknowledged, he is “not sure what the average internist sees day in and day out.” Therefore, plaintiffs proposed expert witness does not satisfy the same practice/instruction requirement of § 2169(l)(b).
For this reason, the trial court did not abuse its discretion in concluding that plaintiffs proposed expert witness is not qualified to testify regarding the appropriate standard of practice or care under § 2169(1). Because plaintiff failed to present an expert qualified under § 2169(1) to testify with regard to the appropriate standard of practice or care, the trial court properly granted a directed verdict in favor of defendant.
V CONCLUSION
If a defendant physician is a specialist, the plaintiffs expert witness must have specialized in the same specialty as the defendant physician at the time of the occurrence that is the basis for the action. If a defendant physician specializes in a subspecialty, the plaintiffs expert witness must have specialized in the same subspecialty as the defendant physician at the time of the occurrence that is the basis for the action. If the defendant physician is a specialist who is board certified, the expert witness must be a specialist who is board certified in that specialty. If the defendant physician has received a certificate of special qualifications, the plaintiffs expert witness must have obtained the same certificate of special qualifications. However, under § 2169(l)(a), only the one most relevant specialty or *579 subspecialty must match; and only the one most relevant board certificate or certificate of special qualifications must match. We are aware of no precedent that would, as required by Chief Justice TAYLOR’s concurrence, require all irrelevant specialties to match or countenance a phalanx of experts, each of whom would be charged with testifying about a different irrelevant specialty. In addition, under § 2169(l)(b), if the defendant physician is a specialist, the plaintiffs expert witness must have devoted a majority of his professional time during the year immediately preceding the date on which the alleged malpractice occurred to practicing or teaching the specialty or subspecialty that the defendant physician was practicing at the time of the alleged malpractice, i.e., the one most relevant specialty or subspecialty.
The trial courts did not abuse their discretion here in concluding that plaintiffs’ proposed expert witnesses were not qualified under MCL 600.2169(1) to testify regarding the appropriate medical standard of practice or care. Therefore, in Woodard, we affirm the part of the Court of Appeals judgment that held that plaintiffs’ proposed expert is not qualified and remand this case to the trial court for reentry of its order dismissing plaintiffs’ claim with prejudice. In Hamilton, we reverse the Court of Appeals judgment and remand this case to the trial court for reentry of its order granting a directed verdict to defendant.
Cavanagh, Weaver, and Kelly, JJ., concurred with Markman, J.

 Contrary to Chief Justice Taylor’s concurrence’s assertion, this opinion is the majority opinion in this case given that it has four supporters— Justices Cavanagh, Weaver, and Kelly, and myself. Chief Justice Taylor’s concurrence sows confusion in an area of the law that is desperately in need of clarity.

 We directed the parties to address:
(1) what are the appropriate definitions of the terms "specialty” and “board certified” as used in MCL 600.2169(l)(a); (2) whether either “specialty” or “board certified” includes subspecialties or certificates of special qualifications; (3) whether MCL 600.2169(l)(b) requires an expert witness to practice or teach the same subspecialty as the defendant; (4) whether MCL 600.2169 requires an expert witness to match all specialties, subspecialties, and certificates of special qualifications that a defendant may possess, or whether the expert witness need only match those that are relevant to the alleged act of malpractice. See Tate v Detroit Receiving Hosp, 249 Mich App 212 (2002); and (5) what are the relevant specialties, subspecialties, and certificates of special qualifications in this case.

 We directed the parties to address:
(1) the proper construction of the words “specialist” and “that specialty” in MCL 600.2169(l)(a) and MCL 600.2169(l)(b)(¿); and (2) the proper construction of “active clinical practice” and “active clinical practice of that specialty” as those terms are used in MCL 600.2169(l)(b)(i).

4 MCL 600.2169(1) only applies to expert testimony on the appropriate standard of practice or care; it does not apply to other kinds of expert testimony, such as expert testimony on causation.

 Because the two cases at issue here involve questions pertaining to plaintiffs’ expert witnesses’ qualifications, we repeatedly refer to § 2169(1) as imposing requirements on plaintiffs’ experts. However, contrary to Chief Justice Taylor’s concurrence’s contention, post at 627-628, we recognize that § 2169(1) applies equally to a defendant’s expert witnesses because it applies both to expert testimony offered “against” and on “behalf” of the defendant physician. We also note that although we repeatedly refer to the defendant physician, we recognize that § 2169(1) applies to all licensed health professionals, not just physicians.

 We note that the American Board of Medical Specialties, the national certifying board by which 90 percent of all physicians are certified, states in its amicus curiae brief that a subspecialty constitutes a specialty.

 Further, as this Court explained in Farrington v Total Petroleum, Inc, 442 Mich 201, 210; 501 NW2d 76 (1993), “[c]ourts cannot assume that the Legislature inadvertently omitted from one statute the language that it placed in another statute, and then, on the basis of that assumption, apply what is not there.”

 We find it befuddling that Chief Justice Taylor’s concurrence would adopt the definition of “board certified” set forth by the Appellate Division of the Supreme Court of New York without further explanation.

 We note that these certificates are also sometimes referred to as “certificates of added qualification.”

 We note that the American Board of Medical Specialties stated in its amicus curiae brief that it considers certificates of special qualifications to constitute board certificates.

 If the defendant physician is not a specialist, § 2169(l)(b) requires the plaintiffs expert witness to have “during the year immediately *566 preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to either ... [t]he active clinical practice of the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed [or] [t]he instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed ....”

 Just as a subspecialty is a specialty within the meaning of § 2169(l)(a), a subspecialty is a specialty within the meaning of § 2169(l)(b). Therefore, if the defendant physician specializes in a subspecialty and was doing so at the time of the alleged malpractice, the plaintiffs expert witness must have devoted a majority of his professional time during the year immediately preceding the date on which the alleged malpractice occurred to practicing or teaching that subspecialty.

 Contrary to Chief Justice Taylor’s concurrence’s contention, we do not hold that "only one expert may be utilized.” Post at 592. Rather, we make a distinction between experts testifying about the standard of practice or care and experts testifying about issues that are not related to the standard of practice or care. Regarding the former, we conclude that only one standard of practice or care was envisioned under § 2169(1), and, thus, the plaintiff need only produce one expert to testify about that standard. If a plaintiff wishes to, however, he is free to offer several different experts to testify regarding that relevant specialty, and each must meet the criteria of § 2169(1). With respect to experts who are testifying about issues unrelated to the standard of practice or care, there are no limitations on how many experts a plaintiff can produce, and a trial court will consider whether each expert is qualified using the considerations set forth in § 2169(2) as well as any other applicable requirements.

 The concurrence by Chief Justice Taylor seems to believe that this would not be a problem because MCL 600.2955 precludes opinion testimony that is not based on “proven theories and methodologies.” Post at 621 n 58. By this argument, the concurrence seems to be confusing relevancy and reliability. Just because an expert testifies that the standard of care with regard to nephrology is “X,” and this testimony is reliable in the sense that it is based on “proven theories and methodologies,” does not mean that it is relevant testimony. Evidence is only relevant if it has a “tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” MRE 401. If the defendant physician was not practicing nephrology at the time of the alleged malpractice, testimony regarding the standard of care for nephrology will not “make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” If the standard of care for nephrology is irrelevant, why require an expert witness to specialize in nephrology?

 The concurrence by Chief Justice Taylor asks us, “How is the trial judge to determine which specialties are ‘relevant’ without expert testimony ... ?” Post at 625. First, in most cases, expert testimony probably will not be required to determine which specialties are relevant. For instance, if a defendant physician specializes in cardiovascular surgery and podiatry and he was performing heart surgery at the time of the alleged malpractice, we doubt very highly that the trial court will need expert testimony to determine that cardiovascular surgery is the relevant specialty. The concurrence states that it finds our belief that the trial court may he able to determine without expert testimony which specialty is relevant “curious given this Court’s historical recognition that expert testimony is almost always needed to establish the standard of care in medical malpractice actions. ...” Post at 625 n 64. The concurrence appears to be ignoring the distinction between determining which specialty is relevant and determining the appropriate standard of care. Using the cardiovascular surgeon/podiatrist example, although the trial court can probably determine without expert testimony that cardiovascular surgery is the relevant specialty, the trial court probably cannot determine what the appropriate standard of care is for cardiovascular surgeons performing heart surgery.
Second, the trial court is, of course, not precluded from seeking expert testimony if it believes that such testimony is necessary for it to determine which specialty is relevant.

 The concurrence by Chief Justice Taylor contends that our opinion will deny parties their constitutional right to have a jury determine factual matters. Post at 619. This is simply incorrect. Whether expert testimony is relevant and whether an expert is qualified to testify have historically been decisions for the trial court, not a jury, to make. Gilbert v DaimlerChrysler Corp, 470 Mich 749, 780 n 46; 685 NW2d 391 (2004). Relevancy is not, and has never been, a factual determination that is left to the jury to make. MRE 402 and 702.
The concurrence also contends that our opinion will deny parties their procedural due process rights because it will deny them the right to present evidence. Post at 626-628. Although parties have a right to present relevant evidence, as long as the admission of such evidence does not violate the Constitution of the United States, the Constitution of the state of Michigan, a rule of evidence, or a court rule, parties do not have a right to present irrelevant evidence. MRE 402. Further, parties are not precluded from arguing that a certain specialty is relevant. However, it is up to the trial court in its gatekeeping role to determine whether the specialty is actually relevant. Gilbert, supra at 780 n 46.

 We note that, while § 2169(1) only applies to “expert testimony on the appropriate standard of practice or care,” § 2169(2), § 2955, and MRE 702 apply to all expert testimony in medical malpractice actions. Therefore, while all experts must meet the requirements of § 2169(2), § 2955, and MRE 702, only those experts testifying regarding the appropriate standard of practice or care have to meet the requirements of § 2169(1).

 The concurrence by Chief Justice Taylok apparently believes that this will require the creation of a separate record and that each party will have to present its own experts at this point. We respectfully disagree. All a defendant has to do to preserve the issue for appeal is to object to the admission of the plaintiffs expert’s testimony and to state why he believes the plaintiffs expert is not qualified. If the issue is appealed and the appellate court believes that it does not have enough information before it to review the trial court’s decision, it can certainly remand for an evidentiary hearing or take other appropriate action. The concurrence creates the potential for procedural confusion out of thin air.

 Chief Justice Taylor’s concurrence asks us how we “know” that the defendant physician was practicing pediatric critical care medicine at the time of the alleged malpractice. Post at 624. We “know” this because all of the admissible evidence supports the trial court’s finding that the defendant physician was practicing pediatric critical care medicine at the time of the alleged malpractice. Further, as Chief Justice Taylor’s concurrence points out, post at 623, 632-633, the plaintiffs did not rebut that finding by presenting qualified expert testimony to support their argument that the defendant physician was not practicing pediatric critical care medicine at the time of the alleged malpractice. Contrary to what Chief Justice Taylor’s concurrence suggests, even assuming that plaintiffs’ expert is qualified to testify that defendant was not practicing pediatric critical care medicine at the time of the alleged malpractice, plaintiffs’ expert cannot reasonably be understood to have testified that the defendant was not practicing pediatric critical care medicine at the time of the alleged malpractice. Plaintiffs’ expert only testified that he performed the procedures in this case during his residency. Unlike Chief Justice Taylor’s concurrence, we do not believe that the jury could have reasonably inferred from this testimony that it is “relatively common for doctors who practice only general pediatric care to perform the procedures in this case ....” Post at 624 n 63. Moreover, it is not our task to “know” whether pediatric critical care medicine is or is not the relevant specialty; rather, our task is to determine whether the trial court abused its discretion in determining that pediatric critical care medicine is the relevant specialty.

 Plaintiffs’ proposed expert witness is a pediatrician, not a pediatric critical care specialist. A good illustration of the differences between these two types of physicians can be found in this very case: when the infant began to have respiratory problems, plaintiffs took their son to the pediatrician; the pediatrician, recognizing that the infant needed to be *577 treated by a pediatric critical care specialist, then placed the infant in an ambulance and sent him to the defendant hospital, for treatment by the defendant physician.

 In fact, plaintiffs’ proposed expert witness has never worked as an attending physician in a pediatric intensive care unit nor has he ever taught pediatric critical care medicine. Further, plaintiffs’ proposed expert has not inserted an arterial line or a venous catheter in an infant, the specific medical procedure that was allegedly performed negligently in this case, since his residency in the early 1980’s.