# STATE OF MICHIGAN

# COURT OF APPEALS

---

ESTATE OF AURA ARGENTINA PEREZ, by
JENNY NASYELLY PEREZ, Personal
Representative, and RUBEN PEREZ,

        Plaintiffs-Appellees/Cross-
        Appellants,

v

HENRY FORD HEALTH SYSTEM,

        Defendant-Appellant/Cross-
        Appellee,

and

DANIEL MORRIS, M.D., DR. FRANK
MCGEORGE, DR. OLESYA
KRIVOSPITSKAYA, DR. TAREK TOUBIA, DR.
MICHELLE SLEZAK, DR. GREGORY HAYS,
DR. HEATHER EVANSON, DR. E. JENKINS
BROWN, DR. DENISE LEUNG, DR. LAURIE
ROLLAND, VIVEK RAI, M.D., DR. ANDREW
RUSSMAN, DR. SATHYAVANI
RAMANUJAM, and DR. ASHA SHAJAHAN,

        Defendants.

UNPUBLISHED
December 4, 2018

No. 340082
Wayne Circuit Court
LC No. 15-014697-NH

---

Before: SHAPIRO, P.J., and CAVANAGH and K. F. KELLY, JJ.

SHAPIRO, J. (*concurring in part and dissenting in part*).

I concur with the majority's conclusion that plaintiff should be permitted to amend her witness list to add a new expert given the reversal of the trial court's ruling as to Dr. Chitra Venkatasubramanian's qualifications. However, under the circumstances of this case, I do not agree that Dr. Venkatasubramanian's subspecialty certifications in neurological critical care and vascular neurology and her practice in those subspecialties disqualifies her as an expert witness.

Plaintiffs' medical malpractice action concerns Dr. Howard Feit, a board-certified neurologist. Dr. Venkatasubramanian is also a board-certified neurologist and therefore satisfies MCL 600.2169(1)(a), which provides:

> (1) In an action alleging medical malpractice, a person shall not give expert testimony on the appropriate standard of practice or care unless the person is licensed as a health professional in this state or another state and meets the following criteria:

> (a) If the party against whom or on whose behalf the testimony is offered is a specialist, specializes at the time of the occurrence that is the basis for the action in the same specialty as the party against whom or on whose behalf the testimony is offered. However, if the party against whom or on whose behalf the testimony is offered is a specialist who is board certified, the expert witness must be a specialist who is board certified in that specialty.

The issue in this case is whether Dr. Venkatasubramanian satisfies MCL 600.2169(1)(b), which requires that the expert witness must have

> during the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to either or both of the following:

> (*i*) The active clinical practice of the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed and, if that party is a specialist, the active clinical practice of that specialty.

> (*ii*) The instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed and, if that party is a specialist, an accredited health professional school or accredited residency or clinical research program in the same specialty.

The majority determines that the key question is whether more than 50% of Dr. Venkatasubramanian's time was spent in the practice of "general neurology" as opposed to neurocritical care or vascular neurology and arithmetically concludes that it was less than 50%. Even assuming that the majority's calculation is correct, I would conclude that Dr. Venkatasubramanian's is qualified to testify as an expert witness in this case.

It is clear that a general specialist may not testify against a subspecialist regarding performance of that subspecialty. However, the inverse is not necessarily the case. Depending on the nature of the subspecialty and the expert's particular practice, a subspecialist may testify as to the standard of care in his or her general specialty. The only published decision in which a specialist was disqualified on the basis of spending more than 50% of his or her time performing a subspecialty is *Hamilton v Kuligowski*, the companion case to *Woodard v Custer*, 476 Mich 545; 719 NW2d 842 (2006). In *Hamilton*, the Supreme Court held that an internist with a subspecialty in infectious diseases could not testify to the standard of care of an internist with no subspecialty, but the Court did not set out a bright-line rule barring any subspecialist from

testifying as to the standard of care for the more general specialty. *Id*. at 577-578. Instead, the Court concluded that the proposed expert did not spend a majority of his time practicing general internal medicine because his practice was completely focused on infectious diseases and he agreed that he was "not sure what the average internist sees day in and day out." *Id*. at 578 (quotation marks omitted). By contrast, in this case Dr. Venkatasubramanian made it clear that her practice as a consulting neurologist, whether with the general medical unit or the intensive care unit, involves caring for all of a patient's neurological needs.[1] Thus, I would conclude that Dr. Venkatasubramanian satisfies MCL 600.2169(1)(b)'s practice requirement and is able to testify to whether Dr. Feit's actions met the applicable standard of care.

/s/ Douglas B. Shapiro

---

[1] Notably, the subspecialties within internal medicine are unusual in that internal medicine is an extraordinarily broad specialty. Subspecialties within internal medicine represent widely divergent areas of practice including nephrology, cardiology, infectious diseases, hepatology, gastroenterology, and endocrinology. A gastroenterologist may recognize that his or her patient should be referred to a cardiologist, but is extraordinarily unlikely to diagnose or treat a patient's heart, while a neurologist with a subspecialty can (and often does) treat all of a patient's neurological conditions.