*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF LAMARR GREEN, by JULIE
BRESKO, Personal Representative,

        Plaintiff-Appellee,

v

BASHAR YALDO, M.D.,

        Defendant,

and

SHAHRZAD ABBASSI-RAHBAR and ST.
JOSEPH MERCY-OAKLAND,

        Defendants-Appellants.

UNPUBLISHED
December 12, 2024
12:39 PM

No. 357931
Oakland Circuit Court
LC No. 2020-179077-NH

ON REMAND

Before: CAVANAGH, P.J., and K. F. KELLY and GARRETT, JJ.

PER CURIAM.

This case returns to us on remand from the Michigan Supreme Court to reconsider the admissibility of plaintiff's standard of care expert in light of the Supreme Court's decision in *Stokes v Swofford*, ___ Mich ___; ___ NW3d ___ (2024) (Docket No. 162302), which overruled *Woodard v Custer*, 476 Mich 545; 719 NW2d 842 (2006).[1] Because the decision in *Stokes*, ___ Mich at ___, slip op at 27, mandates that the trial court only examine the relevant general board certification under MCL 600.2169(1) when matching specialties, we vacate that portion of the trial court's order denying defendant's motion for summary disposition on the issue of the expert's admissibility and remand for further proceedings consistent with this opinion. And for the reasons stated in our previous opinion, *Estate of Green v Yaldo,*

---

[1] *Estate of Green v Yaldo, MD*, ___ Mich ___; 12 NW3d 400 (2024).

*MD*, unpublished per curiam opinion of the Court of Appeals, issued May 25, 2023 (Docket No. 357931), we otherwise affirm the trial court's order.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This is a medical malpractice action that this Court previously decided in favor of defendants Shahrzad Abbassi-Rahbar ("Dr. Abbassi") and St. Joseph Mercy-Oakland ("St. Joseph") on the issue of whether Dr. Jason Nirgiotis, plaintiff's proposed expert, was qualified to testify regarding Dr. Abbassi's standard of care in the specialty of surgical critical care.

In our previous opinion, we set forth the relevant facts of the case:

The decedent, LaMarr Green, was referred to defendant Bashar Yaldo, M.D., a board-certified general surgeon, for treatment of a bilateral inguinal hernia in 2017. Dr. Yaldo performed a robotic bilateral inguinal hernia repair at St. Joseph on February 2, 2018, and Green was discharged the same day. On the evening of February 5, 2018, Green returned to St. Joseph's with complaints of abdominal pain. He also reported throat discomfort, his recent hernia surgery, and a lack of bowel movements for four to five days. An x-ray revealed a possible early or partial small bowel obstruction, and Green was admitted to the hospital. Despite limited periods of improvement, Green's condition deteriorated and he passed away approximately two weeks later.

Plaintiff initiated this action alleging medical malpractice by Dr. Yaldo and Dr. Abbassi, who was then a resident in St. Joseph's general surgery program and participated in Green's treatment as part of the surgical critical care team. St. Joseph was named as a defendant because it "affirmatively held itself out as the employer of, and responsible for the acts or non-actions of" Dr. Yaldo and Dr. Abbassi.

Defendants moved for summary disposition under MCR 2.116(C)(10), first arguing that St. Joseph could not be held vicariously liable because Dr. Yaldo was an independent contractor, and plaintiff did not have any evidence supporting an ostensible agency theory. Defendants also sought summary disposition of claims related to Dr. Abbassi's treatment because plaintiff's proposed expert, Dr. Jason Nirgiotis, was not qualified to testify regarding Dr. Abbassi's specialty. The trial court denied defendants' motion, reasoning that questions of fact existed regarding Dr. Yaldo's ostensible agency and Dr. Abbassi's specialty. [*Estate of Green*, unpub op at 1-2.]

On appeal, we affirmed the trial court's order on the issue of ostensible agency, concluding the court did not err when it found that there was a genuine issue of material fact whether Dr. Yaldo was acting as St. Joseph's ostensible agent at the time of Green's second admission to the hospital. *Id*. at 4. Although Green and Dr. Yaldo had a preexisting doctor-patient relationship, which would tend to negate the existence of an agency relationship between Dr. Yaldo and St. Joseph, we found it significant that when Green returned to the hospital upon complaints of stomach pain, he did not specifically seek Dr.

Yaldo's care, whose "involvement in the case was instigated by a St. Joseph resident alerting Dr. Yaldo to Green's hospitalization . . . ." *Id*. at 5.[2]

We reversed, however, the trial court's order concerning the admissibility of Dr. Nirgiotis's expert opinion as it related to Dr. Abbassi's standard of care. Stating that although Dr. Abbassi was a resident in the general surgery program at the hospital, at the time of Green's treatment, Dr. Abbassi was participating in a rotation "in the surgical critical care service—a requirement of the general surgery program—and her involvement in Green's care was strictly in that capacity." *Id*. at 8. Because Dr. Nirgiotis was not a specialist in surgical critical care or general surgery—but rather a specialist in pediatric surgery—he was not qualified under MCL 600.2169(1) to testify in regard to the standard of care applicable to Dr. Abbassi. *Id*. at 8-9.

Plaintiff sought leave to appeal this Court's decision concerning Dr. Nirgiotis with the Michigan Supreme Court. On October 28, 2024, in lieu of granting leave, the Supreme Court vacated Part IV of this Court's opinion, which addressed Dr. Nirgiotis, and remanded to us "for reconsideration in light of *Stokes*." *Estate of Green v Yaldo, MD*, ___ Mich ___; 12 NW3d 400 (2024).

## II. STANDARDS OF REVIEW

This remand involves the interpretation of MCL 600.2169(1), which is a question of law subject to de novo review. *Stokes*, ___ Mich at ___; slip op at 11. We review for an abuse of discretion a trial court's ruling concerning whether a proposed expert witness is qualified to testify under MCL 600.2169. *Id*. A trial court abuses its discretion when its ruling falls outside the range of principled outcomes. *Id*.

## III. ANALYSIS

"The plaintiff in a medical malpractice action bears the burden of proving: (1) the applicable standard of care, (2) breach of that standard by defendant, (3) injury, and (4) proximate causation between the alleged breach and the injury." *Cox v Bd of Hosp Managers for the City of Flint*, 467 Mich 1, 10; 651 NW2d 356 (2002) (quotation marks and citation omitted). Failure to establish any one of these four elements is fatal to a plaintiff's medical malpractice suit. *Id*. The "standard of care is founded upon how other doctors in that field of medicine would act and not how any particular doctor would act." *Cudnik v William Beaumont Hosp*, 207 Mich App 378, 382; 525 NW2d 891 (1994) (quotation marks and citation omitted).

The admission of expert testimony related to the standard of care is governed, in part, by MCL 600.2169, which states, in relevant part, that in medical malpractice cases, "a person shall not give expert testimony on the appropriate standard of practice or care unless the person is licensed as a health professional in this state" and meets the following criteria:

---

[2] The issue of ostensible agency was not a part of the Michigan Supreme Court's remand to us, and is not addressed in further detail in this opinion. However, as a matter of clarification and to avoid any confusion, we again affirm the trial court's order denying defendants' motion as it related to the issue of ostensible agency for the reasons expressed in our previous opinion. See *Estate of Green*, unpub op at 4-5.

(a) If the party against whom or on whose behalf the testimony is offered is a specialist, specializes at the time of the occurrence that is the basis for the action in the same specialty as the party against whom or on whose behalf the testimony is offered. However, if the party against whom or on whose behalf the testimony is offered is a specialist who is board certified, the expert witness must be a specialist who is board certified in that specialty. [MCL 600.2169(1)(a).]

In *Woodard*, the Michigan Supreme Court, construing MCL 600.2169(1), stated that "if a defendant physician is a specialist, the plaintiff's expert witness must have specialized in the same specialty as the defendant physician at the time of the alleged malpractice." *Woodard*, 476 Mich at 560-561. Additionally, a plaintiff's expert was required to hold the same board certification as the defendant doctor if the physician was board certified in the pertinent specialty. *Id*. The *Woodard* Court noted that under MCL 600.2169(1)(a), "the plaintiff's expert does not have to match all of the defendant physician's specialties; rather, the plaintiff's expert only has to match the one most relevant specialty." *Id*. at 567-568. The specialty engaged in by the defendant physician during the course of the alleged malpractice constitutes the one most relevant specialty. *Id*. at 560.

The Court in *Woodard* explored the meaning of the terms "specialty" and "specialist" as used in MCL 600.2169(1)(a), along with examining the concept of a "subspecialty," stating:

> Both the dictionary definition of "specialist" and the plain language of § 2169(1)(a) make it clear that a physician can be a specialist who is not board certified. They also make it clear that a "specialist" is somebody who can potentially become board certified. Therefore, a "specialty" is a particular branch of medicine or surgery in which one can potentially become board certified. Accordingly, if the defendant physician practices a particular branch of medicine or surgery in which one can potentially become board certified, the plaintiff's expert must practice or teach the same particular branch of medicine or surgery.

> Plaintiffs argue that § 2169(1)(a) only requires their expert witnesses to have specialized in the same specialty as the defendant physician, not the same subspecialty. We respectfully disagree. . . . [A] "subspecialty" is a particular branch of medicine or surgery in which one can potentially become board certified that falls under a specialty or within the hierarchy of that specialty. A subspecialty, although a more particularized specialty, is nevertheless a specialty. Therefore, if a defendant physician specializes in a subspecialty, the plaintiff's expert witness must have specialized in the same subspecialty as the defendant physician at the time of the occurrence that is the basis for the action. [*Woodard*, 476 Mich at 561-562.]

It is the *Woodard* Court's analysis distinguishing a "specialty" from a "subspecialty" that, in *Stokes*, the Michigan Supreme Court found problematic. In *Stokes*, the Supreme Court stated that *Woodard* "must be overruled" because it "incorrectly conflated the terms 'specialty' and 'subspecialty' in a manner that is inconsistent with the statutory language in MCL 600.2169." *Stokes*, ___ Mich at ___; slip op at 2. Specifically, the Supreme Court concluded that the *Woodard* Court "incorrectly conflated the terms 'specialty' and 'subspecialty' in a manner that is inconsistent with the plain language of the statute, and it essentially negated MCL 600.2169(2) and (3), which provide significant discretion to trial courts to exclude experts even when such experts qualify under Subsection (1)." *Stokes*, ___ Mich at ___;

slip op at 2. As used in MCL 600.2169(1), the terms "specialist" and "specialties" "are defined as the specialties recognized by the American Board of Medical Specialties (ABMS), the American Osteopathic Association (AOA), the American Board of Physician Specialties (ABPS), or other similar nationally recognized umbrella-based physician certifying entities." *Stokes*, ___ Mich at ___; slip op at 2. The *Stokes* Court noted that "[w]hile the Legislature adopted MCL 600.2169 to ensure that medical experts would not be underqualified, *Woodard*'s mistaken interpretation as to subspecialties effectively excludes highly qualified medical providers from serving as experts." *Stokes*, ___ Mich at ___; slip op at 20.

The Supreme Court also concluded that "the 'matching' requirement under MCL 600.2169 follows the listed general board certifications, which are the baseline 'specialties' recognized by such entities for certification purposes." *Stokes*, ___ Mich at ___; slip op at 2. Emphasizing that "[t]he statute does not require matching of subspecialties," the Court stated that trial courts "must ensure that experts with matching specialties under MCL 600.2169(1) meet other criteria set forth in MCL 600.2169(2)" and "MCL 600.2169(3) provides trial courts with broad discretion in assessing experts." *Stokes*, ___ Mich at ___; slip op at 2. Elaborating, the Court stated:

> A primary rationale of the Legislature in adopting MCL 600.2169(1) was to ensure that experts in medical malpractice actions are not underqualified. This is an understandable goal. Physicians practicing internal medicine provide the quintessential example of this concern. Internal medicine is recognized as a specialty by the ABMS, and it has more than 20 subspecialties that often have little to do with one another. For instance, a pulmonologist and a cardiologist are both subspecialists under the specialty of internal medicine. Concerns have been raised that doing away with consideration of subspecialties for purposes of the matching requirement would mean that a pulmonologist would then be qualified to testify against a cardiologist since both share the same specialty. However, this argument ignores MCL 600.2169(2) and (3). Even if expert specialties "match" under MCL 600.2169(1), the trial court still has discretion on whether to accept the expert as qualified to provide testimony in a particular case. [*Stokes*, ___ Mich at ___; slip op at 18-19 (footnotes omitted).]

Applying the facts of this case to the holding in *Stokes*, we conclude that the trial court erred when it held there was a question of fact as to whether Dr. Abbassi was practicing in surgical critical care or general surgery. The general board certification forming the baseline specialty was general surgery. The American Board of Surgery recognizes surgical critical care as a *subspecialty* of the specialty of general surgery. See American Board of Surgery, *Critical care surgeons must meet specific requirements before they are deemed certified by the ABS*, < www.absurgery.org/get-certified/surgical-critical-care/ > (accessed December 3, 2024) ("Primary certification in surgery is a requirement for certification in SCC [surgical critical care]."); see also *DeMuth v Strong*, 205 Md App 521, 545 n 6; 45 A3d 898 (2012) ("[T]he American Board of Surgery will grant certification in the general areas of general surgery and vascular surgery. It also will grant subspecialty certification in the specialty areas of pediatric surgery, surgical critical care, hospice and palliative medicine, complex general surgical oncology, and a combination program of thoracic and general surgery."). As we recognized in our previous opinion, Dr. Abbassi was working as a resident under board-certified general surgeon Dr. Yaldo and was a resident in the general surgery program and could, therefore, potentially obtain board certification in that specialty. In addition, Dr. Nirgiotis is a board-certified general surgeon. Thus, the "specialties" matched for purposes of satisfying MCL 600.2169(1) under *Stokes*, and the trial court's order must therefore be vacated on that basis.

However, as the *Stokes* Court recognized, trial courts are afforded "broad discretion" under MCL 600.2169(2) and (3) to "assess[] experts," and those subsections "provide assurances that experts must be qualified for the case before the trial court." *Stokes*, ___ Mich at ___; slip op at 20 (footnote omitted). In the trial court, no party raised any arguments under MCL 600.2169(2) or (3), and the trial court did not consider either provision when it denied defendant's motion. Accordingly, on remand, and consistent with *Stokes*, the trial court shall, "at minimum," evaluate the following criteria relative to Dr. Nirgiotis:

> (a) The educational and professional training of the expert witness.

> (b) The area of specialization of the expert witness.

> (c) The length of time the expert witness has been engaged in the active clinical practice or instruction of the health profession or the specialty.

> (d) The relevancy of the expert witness's testimony. [MCL 600.2169(2).]

In addition, the trial court is afforded discretion on remand to "disqualify an expert witness on grounds other than the qualifications set forth in [MCL 600.2169]." MCL 600.2169(3).

Lastly, in the trial court, defendants argued that they were entitled to summary disposition of claims arising from Dr. Abbassi's treatment because plaintiff could not establish that Dr. Abbassi breached the standard of care because plaintiff challenged decisions that were the ultimate responsibility of the attending surgical critical care specialists—not Dr. Abbassi—and Dr. Nirgiotis acknowledged that he was unable to determine whether Dr. Abbassi was carrying out the decisions of others or acting on her plans that were known and approved by the supervising specialists. The trial court did not decide this issue; therefore, on remand, the trial court shall address this argument in the first instance.

The trial court's order granting defendants' motion for summary disposition is affirmed in part, vacated in part, and the case is remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Because no party prevailed in full, no costs are awarded. MCR 7.219(A).

/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly
/s/ Kristina Robinson Garrett

-6-