# Order

**Michigan Supreme Court**
**Lansing, Michigan**

December 21, 2011

Robert P. Young, Jr.,
Chief Justice

Michael F. Cavanagh
Marilyn Kelly
Stephen J. Markman
Diane M. Hathaway
Mary Beth Kelly
Brian K. Zahra,
Justices

141727

ESTATE OF DANIEL D. JILEK, by JOY
A. JILEK, Personal Representative,
          Plaintiff-Appellee,

v

CARLIN C. STOCKSON, M.D., and EPMG
OF MICHIGAN,
          Defendants-Appellants,
and

MAPLE URGENT CARE, d/b/a MAPLE
HEALTH BUILDING, TRINITY HEALTH-
MICHIGAN, CATHERINE MCAULEY
HEALTH CENTER, IRWIN M. LUTWIN,
CARPENTER HEALTH CARE, d/b/a
CARPENTER HEALTH CENTER, and
ROBERT E. ANDERSON,
          Defendants.

SC: 141727
COA: 289488
Washtenaw CC: 05-000268-NH

_____/

On October 5, 2011, the Court heard oral arguments on the application for leave to appeal the July 29, 2010 judgment of the Court of Appeals. On order of the Court, the application is again considered and, pursuant to MCR 7.302(H)(1), in lieu of granting leave to appeal, we REVERSE the judgment of the Court of Appeals. The trial court correctly determined as a matter of law that the appropriate standard of care was "family practice" because the defendant physician is board-certified solely in family medicine. Further, pursuant to MCL 600.2912a, the trial court properly allowed the jury to consider that standard of care in light of the facilities available to the defendant physician — an urgent care center, not an emergency medical facility. The trial court did not abuse its discretion in ruling that defendants' two experts were qualified to provide "standard of care" testimony under MCL 600.2169 because they satisfied the specific qualifications of MCL 600.2169(a)-(b). We also conclude that the trial court did not abuse its discretion in excluding plaintiff's proposed document exhibits at issue for the reasons stated in the analysis of the Court of Appeals dissenting opinion.

Contrary to the dissent's assertion, the trial court's error in waiting to establish the standard of care until after the proofs had closed is not "inconsistent with substantial justice." MCR 2.613(A). Dr. Birrer, one of plaintiff's experts, testified that there is not a difference between family practice medicine and emergency medicine. Thus, under plaintiff's theory of the case, additional and perhaps distinct testimony on the standard of care for doctors specializing in family medicine was unnecessary. Furthermore, the

plaintiff significantly contributed to the trial court's error by arguing that the trial court should have used *Woodard v Custer*'s "one-most-relevant-specialty" test to determine that Dr. Stockson was practicing emergency medicine, and thus that she should have been held to the standard of care of an emergency medicine specialist. 476 Mich 545, 566 (2006). Plaintiff's argument ultimately persuaded the trial court to correctly conclude that Dr. Stockson was a "specialist," just not in the incorrect "specialty" plaintiff desired. Plaintiff should not be rewarded with a retrial simply because her faulty argument only half side-tracked the trial court. Moreover, the trial court did not preclude plaintiff from presenting standard-of-care testimony from a doctor specializing in family medicine. Thus, while the trial court did not manage the standard of care or the expert qualification issues perfectly, its error did not prejudice plaintiff so as to make upholding the jury verdict "inconsistent with substantial justice" under MCR 2.613(A). We REMAND this case to the Court of Appeals for consideration of issues raised by the plaintiff but not addressed by that court during its initial review of this case.

CAVANAGH, J. (*dissenting*).

I respectfully dissent because, in my view, the majority misses the point of this case. By reversing the Court of Appeals' grant of a new trial, the majority ignores that the trial court waited until the close of proofs to determine the appropriate standard of care. The trial court's error essentially nullified much of the expert testimony already heard by the jury, disqualified at least one expert who had already testified, and emphasized the testimony of defendants' experts over those of plaintiff. In my opinion, this error rendered the trial so fundamentally deficient that a refusal to grant a new trial is "inconsistent with substantial justice." MCR 2.613(A). I therefore respectfully dissent from the majority's implicit affirmance of the trial court's erroneous procedure.

Because only qualified experts may testify, and because this Court has held that MCL 600.2169(1) requires that testifying experts must match the "one most relevant standard of practice or care," it follows that the standard of care must be determined before trial in order to qualify the experts.[1] *Woodard v Custer*, 476 Mich 545, 558-566 (2006). Rather than determining the proper standard of care and allowing defendant and plaintiff to prepare accordingly, the trial court permitted each side to present dueling standards of care to the jury. Only at the close of proofs, when it came time to formulate the jury instructions, did the trial court finally rule on the applicable standard of care. In discussing the instructions with the attorneys, the trial court continued to maintain it was appropriate to allow emergency room physicians to testify as to the standard of care. The

---

[1] While I continue to believe that MCL 600.2169 is an unconstitutional violation of the separation of powers doctrine, I also believe that as long as it remains the law in Michigan, the bench and bar deserve guidance as to its proper and evenhanded application. See *Woodard v Custer*, 476 Mich 545, 579-580 (2006) (CAVANAGH, J., concurring); *McDougall v Schanz*, 461 Mich 15, 38 (1999) (CAVANAGH, J., dissenting).

trial court then instructed the jury that the applicable standard of care was that of "a physician specializing in family practice and working in an urgent care center . . . ."[2]

In my view, the trial court seriously erred and deprived plaintiff of a fair trial. First, there is no board certification available for family practice in an urgent-care center, and thus the trial court's hybrid standard of care violates *Woodard*, 476 Mich at 561, in which this Court stated, "[A] 'specialty' is a particular branch of medicine or surgery in which one can potentially become board certified." Second, if the applicable standard of care was indeed family medicine, then the trial court should not have allowed an emergency physician to testify as to the standard of care under MCL 600.2169(1). Had the trial court conclusively ruled on the applicable standard of care before trial, plaintiff would have had at least some opportunity to secure another expert and focus the testimony solely on family medicine.[3]

Third, the trial court's instruction rendered irrelevant much of the testimony of plaintiff's experts. The trial court's instruction effectively disqualified Dr. Michael Sama—after he had already testified—and rendered suspect much of the testimony of

---

[2] The majority's order states that the trial court did not err by determining that "family practice" was the appropriate standard of care, but that statement is erroneous because the trial court did not limit its description of the standard of care to "family practice," but to that of "a physician specializing in family practice and working in an urgent care center . . . ."

[3] Plaintiff asserted from the beginning that emergency medicine was the appropriate standard of care. Defendants failed to respond to interrogatories and avoided stating a definitive position on the standard of care until one month before trial, when nonappellant defendant Trinity Health-Michigan moved to exclude plaintiff's emergency-medicine expert from testifying, arguing that family medicine was the applicable standard of care. The trial court denied Trinity-Health's motion, stating that it agreed with plaintiff that Dr. Michael Sama was properly qualified. In the context of MCL 600.2169, the only reasonable inference was that, if Dr. Sama was qualified to testify, then emergency medicine must be the one most relevant standard of care. Thus, the actions of the trial court led plaintiff to believe her experts were qualified to testify.

Dr. Richard Birrer, who had testified regarding the standard of care for both emergency and family-medicine physicians. In my view, the trial court essentially instructed the jury that it should rely on defendants' experts, both of whom testified solely as to the standard of care for family-medicine physicians. All of these problems could have been avoided by simply determining the applicable standard of care before the beginning of trial. In my view, the trial court's error rendered the trial not just imperfect, but fundamentally flawed in favor of defendants on the critical issue, and a new trial is the only remedy that is consistent with "substantial justice" under MCR 2.613(A).

Therefore, I would affirm the result of the Court of Appeals and remand for a new trial. I would, however, vacate the Court of Appeals' conclusion that emergency medicine is the applicable standard of care and require only that the governing standard of care be determined before trial in order to afford all parties a reasonable opportunity to prepare accordingly and assure that the jury is not confused by potentially erroneous, irrelevant, and misleading evidence.[4] Finally, I would affirm the Court of Appeals with respect to the admissibility of guidelines and internal policies, for the reasons stated in part II of the Court of Appeals' opinion.

MARILYN KELLY, J., joins the statement of CAVANAGH, J.

HATHAWAY, J., would deny leave to appeal.

---

[4] I am not so concerned about whether the correct standard of care in this case is emergency medicine or family medicine. As I have noted in the past, "the lines between various medical specialties are often not the most well-defined," *McDougall*, 461 Mich at 67 (CAVANAGH, J., dissenting), and indeed, the problems in this case center on whether urgent-care medicine is emergency medicine or family medicine. I am far more concerned in this case that the applicable standard of care governing the trial be determined before trial to assure that *both sides* are given a chance to fairly present their evidence without running the risk of having the proverbial rug pulled out from under them at the end of trial.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

December 21, 2011

_____
Clerk

t1214