# STATE OF MICHIGAN

# COURT OF APPEALS

JEAN MARSHALL,

        Plaintiff-Appellee,

v

DANIEL J. RYAN, M.D., PC and DANIEL J. RYAN, M.D.,

        Defendants-Appellants,

and

SKYLER D. WOLFE, M.D., HURON OPHTHALMOLOGY, PC, WALTER CUKROWSKI, D.O., C. F. CUKROWSKI, D.O., and CUKROWSKI EYE CENTER, PC, doing business as EAST MICHIGAN EYE CENTER,

        Defendants.

UNPUBLISHED
December 26, 2017

No.  334196
Genesee Circuit Court
LC No.  13-099654-NH

---

JEAN MARSHALL,

        Plaintiff-Appellee,

v

DANIEL J. RYAN, M.D., PC, DANIEL J. RYAN, M.D., SKYLER D. WOLFE, M.D., and HURON OPHTHALMOLOGY, PC,

        Defendants,

and

WALTER CUKROWSKI, D.O., C. F. CUKROWSKI, D.O., and CUKROWSKI EYE CENTER, PC, doing business as EAST MICHIGAN EYE CENTER,

No.  336619
Genesee Circuit Court
LC No.  13-099654-NH

-1-

Defendants-Appellants.

Before: TALBOT, C.J., and BORRELLO and RIORDAN, JJ.

PER CURIAM.

This is a consolidated medical malpractice appeal. In Docket No. 334196, defendants Daniel J. Ryan, M.D. (Dr. Ryan), and Daniel J. Ryan, M.D., PC (the Ryan defendants, collectively), appeal as of right the trial court's judgment on the jury's verdict in favor of plaintiff. In Docket No. 336619, defendants Walter Cukrowski, D.O., C. F. Cukrowski, D.O., and Cukrowski Eye Center, PC, doing business as East Michigan Eye Center (the Cukrowski defendants, collectively), appeal by delayed leave granted the same judgment of the trial court.[1] Defendants[2] also appeal the trial court's orders denying their motions for a directed verdict of no liability, judgment notwithstanding the verdict (JNOV), a new trial, and remittitur. We affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

Dr. Ryan began treating plaintiff, a 79-year-old woman, in 2009. She complained of continuous watering and morning crustiness of her right eye. Plaintiff had a long history of issues with her right eye, including two retinal detachments, cataract surgery, glaucoma, dry eye syndrome, and uveitis dating back to 1998. As a result of those maladies, plaintiff had long-term complaints of a watering eye, foreign body sensation, redness, pain, and morning crustiness.

On June 28, 2010, Dr. Ryan attempted to treat plaintiff's dry eye syndrome with a bandage contact lens. When plaintiff returned to his office four days later, the bandage contact lens was not in place. Dr. Ryan then placed another lens in plaintiff's right eye on July 2, 2010. During a check-up 10 days later, the second lens also was not in place. Dr. Ryan assumed that the lenses had fallen out of plaintiff's eye.

Plaintiff then sought treatment from Dr. Wolfe, who did not discover the missing bandage contact lenses. Several months later, on March 25, 2011, plaintiff attended an appointment with the Cukrowski defendants. Over the course of eight visits in little more than four months, plaintiff repeatedly complained of some combination of redness, foreign body sensation, watering, pain, and morning crustiness. The Cukrowski defendants did not discover the two bandage contact lenses.

---

[1] *Marshall v Daniel J Ryan, MD*, unpublished order of the Court of Appeals, entered February 21, 2017 (Docket No. 336619).

[2] We use the term "defendants" in this opinion to refer to the Cukrowski defendants and the Ryan defendants collectively, because Skyler D. Wolfe, M.D., and Huron Ophthalmology, PC, are not parties to this appeal.

On August 4, 2011, more than 13 months after Dr. Ryan placed the first bandage contact lens, Dr. Denise John at the University of Michigan saw plaintiff. During that visit, Dr. John's colleague conducted an eversion of plaintiff's upper right eyelid and a sweep of the fornix. This resulted in the discovery and removal of the two bandage contact lenses that Dr. Ryan originally placed in plaintiff's eye.

Plaintiff sued defendants, alleging that their failure to locate and remove the bandage contact lenses proximately caused injuries to her eye. In motions to strike and for a directed verdict, defendants contended that the affidavit of merit supporting the complaint was deficient pursuant to MCL 600.2912d because plaintiff's expert witness on the appropriate standard of care was not qualified to testify pursuant to MCL 600.2169, and further, there was no evidence to support plaintiff's contention that her injuries and symptoms were caused by defendants' alleged negligence. The trial court denied those motions, and after a trial, the jury found defendants liable for $20,000 in economic damages and $320,000 in non-economic damages. The trial court entered a judgment accordingly and denied defendants' motions for post-judgment relief. This appeal followed.

## II. EXPERT WITNESS

Defendants first argue that the trial court abused its discretion by denying their motions to strike the testimony and affidavit of merit of Dr. Matthew Goren. We disagree.

## A. DR. GOREN'S AFFIDAVIT OF MERIT

Defendants contend that Dr. Goren's affidavit of merit should have been stricken due to its failure to comply with the statutory requirements found at MCL 600.2912d.

"Questions of statutory interpretation are . . . reviewed de novo including the statutory requirements for affidavits of merit."[3] "[W]hether an affidavit of merit signed by an expert is adequate is governed by MCL 600.2912d."[4] MCL 600.2912d(1), in pertinent part, contains the following requirements:

> The affidavit of merit shall certify that the health professional has reviewed the notice and all medical records supplied to him or her by the plaintiff's attorney concerning the allegations contained in the notice and shall contain a statement of each of the following:
>
> (a) The applicable standard of practice or care.

---

[3] *Jones v Botsford Continuing Care Corp*, 310 Mich App 192, 199; 871 NW2d 15 (2015).

[4] *Id*. at 199-200.

(b) The health professional's opinion that the applicable standard of practice or care was breached by the health professional or health facility receiving the notice.

(c) The actions that should have been taken or omitted by the health professional or health facility in order to have complied with the applicable standard of practice or care.

(d) The manner in which the breach of the standard of practice or care was the proximate cause of the injury alleged in the notice.

"The failure to include any of the required information renders the affidavit of merit insufficient."[5]

The Michigan Supreme Court provided the following guidance regarding the requirements of MCL 600.2912d(1):

We have often said that it is insufficient to simply state the result when required to state the manner in which there was a breach: The answer to "*How* was the standard of care breached?" is never "The standard of care was breached." Similarly, answering the question "How was the breach the proximate cause of the injury?" requires more than "The breach caused the injury." In other words, the mere correlation between alleged malpractice and an injury is insufficient to show proximate cause. Contrary to the dissents' conclusions, this analysis does not require a heightened level of specificity; rather, it simply gives meaning to the level of specificity required by the statute itself. The Legislature requires a statement not just that a breach caused the injury, but the *manner in which* the breach caused the injury.[6]

Dr. Goren's affidavit of merit satisfied the requirements of MCL 600.2912d. Dr. Goren provided a brief recitation of the facts of the case, particularly noting that Dr. Ryan placed two bandage contact lenses but never insured that they were removed, and that plaintiff later sought treatment from the Cukrowski defendants, during which, the doctors did not discover the lenses lodged in her upper right fornix. As part of the fact section of the affidavit of merit, Dr. Goren noted that the "two bandage contact lenses in the upper fornix . . . were causing a chronic conjunctivitis." Dr. Goren averred that the standard of care required doctors

to perform diagnosis and treatment of [plaintiff's] eye conditions and complaints and to properly place, monitor and identify proper placement of the bandage contact lenses from June 28, 2010 throughout all proposed defendants care and

---

[5] *Kalaj v Khan*, 295 Mich App 420, 426; 820 NW2d 223 (2012) (quotation marks and citation omitted).

[6] *Ligons v Crittenton Hosp*, 490 Mich 61, 77-78; 803 NW2d 271 (2011) (quotation marks and citation omitted).

treatment until August 4, 2011. During this period of time the undiagnosed retained contact lens caused chronic infection and inflammation. This could have easily been diagnosed, remedied, and corrected had there been a proper evaluation to find the contact lenses in the upper fornix of the patient.

Dr. Goren also summarized what defendants should have done differently to satisfy the standard of care, averring that defendants should have "diagnose[d], treat[ed] and remed[ied] any complications or resultant conditions timely and affectively[sic]," and "listen[ed] to the patient and her complaints and identify alternatives for care treatment, diagnoses and evaluation, and production, and to remove the source as early as possible so sequela did not occur and continued and permanent damage did not result." The final paragraph, regarding causation, merely stated that the breach of the standard of care proximately caused the injury in question.

Although the affidavit of merit is confusingly worded in many parts, and at times contains conclusory statements regarding the standard of care, the breach thereof, and causation, reading it as a whole presents sufficient specificity to satisfy the requirements of MCL 600.2912d(1). In brief, the affidavit of merit states that the standard of care requires diagnosing and treating the issue of the retained bandage contact lenses in light of plaintiff's complaints. The affidavit of merit then states that the doctors breached that standard of care by failing to properly consider plaintiff's complaints, use those complaints to diagnose the issue, and then treat plaintiff by removing the lenses. To satisfy the standard of care, Dr. Goren averred that the doctors should have identified and removed the lenses. And as to causation, Dr. Goren, although not in the section that specifically referred to causation, averred that the doctors failure to diagnose plaintiff's issues, identify the retained contact lenses, and remove those lenses, led to plaintiff retaining two contact lenses in her upper fornix, which "caused significant irritation and inflammation and its attendant suffering," and "chronic infection." In sum, the affidavit of merit identified the standard of care, stated Dr. Goren's opinion that the standard of care was breached, provided the method by which the doctors breached that standard of care and what they should have done to avoid that breach, and finally, how that breach caused plaintiff's issues.[7]

Because the affidavit of merit was not deficient pursuant to MCL 600.2912d, the trial court did not err in denying defendants' motions to strike it.[8]

## B. DR. GOREN'S TESTIMONY

Defendants argue that the trial court abused its discretion by permitting Dr. Goren to testify at trial where he was not qualified pursuant to MCL 600.2169. We disagree.

"A trial court's rulings concerning the qualifications of proposed expert witnesses are reviewed for an abuse of discretion."[9] "A trial court does not abuse its discretion when its

---

[7] MCL 600.2912d(1). See also *Lucas v Awaad*, 299 Mich App 345, 378-380; 830 NW2d 141 (2013) (holding that a similarly worded affidavit of merit satisfied the statutory requirements).

[8] *Id*. at 380.

decision falls within the range of principled outcomes."[10] The proponent of the expert bears the burden of establishing that the appropriate qualifications are met.[11]

An expert's qualifications to testify in a medical malpractice action are codified at MCL 600.2169, which in relevant part states:

> (1) In an action alleging medical malpractice, a person shall not give expert testimony on the appropriate standard of practice or care unless the person is licensed as a health professional in this state or another state and meets the following criteria:
>
> (a) If the party against whom or on whose behalf the testimony is offered is a specialist, specializes at the time of the occurrence that is the basis for the action in the same specialty as the party against whom or on whose behalf the testimony is offered. However, if the party against whom or on whose behalf the testimony is offered is a specialist who is board certified, the expert witness must be a specialist who is board certified in that specialty.
>
> (b) Subject to subdivision (c), *during the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time* to either or both of the following:
>
> (*i*) The active clinical practice of the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed and, if that party is a specialist, the active clinical practice of that specialty.
>
> (*ii*) The instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed and, if that party is a specialist, an accredited health professional school or accredited residency or clinical research program in the same specialty.[12]

It is undisputed in this case that Dr. Goren satisfies subsection (1)(a) because, like defendants, Dr. Goren is board-certified in ophthalmology and the parties agree that ophthalmology is the relevant specialty involved in this case. Indeed, defendants only challenge Dr. Goren's qualifications pursuant to MCL 600.2169(1)(b).

Pursuant to subsection (1)(b),

---

[9] *Rock v Crocker*, 499 Mich 247, 260; 884 NW2d 227 (2016).

[10] *Id*.

[11] *Edry v Adelman*, 486 Mich 634, 639; 786 NW2d 567 (2010).

[12] MCL 600.2169(1)(a) and (b) (emphasis added).

if the defendant physician is a specialist, the expert witness must have "during the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to either . . . the active clinical practice of that specialty [or][t]he instruction of students in an . . . accredited health professional school or accredited residency or clinical research program in the same specialty."[13]

"The specialty requirement is tied to the occurrence of the alleged malpractice and not unrelated specialties that a defendant physician may hold."[14] "Obviously, a specialist can only devote a *majority* of his professional time to *one* specialty."[15] "MCL 600.2169(1)(b), therefore, requires a proposed expert physician to spend greater than 50 percent of his or her professional time practicing [or teaching] the relevant specialty the year before the alleged malpractice."[16]

Dr. Goren was qualified to present expert testimony pursuant to MCL 600.2169. Defendants assert that plaintiff failed to provide proof that Dr. Goren worked or instructed in the field of ophthalmology for a majority of his professional time in the year preceding the medical malpractice, in violation of MCL 600.2169(1)(b). Defendants solely rely on the following testimony during Dr. Goren's trial deposition:

> *Q*. Okay. Doctor, from 2008 until now, has a significant portion of your professional time been spent practicing as a board certified ophthalmologist?
>
> *A*. Yes.

Defendants argue that the question asked by plaintiff only established that Dr. Goren spent a *significant* portion of his professional time in ophthalmology, not a *majority* of his time as required by the statute.

While defendants are correct that a "significant" time is not the same as a "majority" of time, defendants failed to consider the rest of Dr. Goren's deposition testimony. Later during his deposition, Dr. Goren testified that he spent 90% of his professional time in the practice or instruction of ophthalmology since February of 2009. That portion of his professional time continued through the trial. All allegations of negligence in the present case occurred, at the earliest, on June 28, 2010, the date that Dr. Ryan placed the first bandage contact lens onto plaintiff's right eye. Therefore, for the year preceding any and all allegations of negligence, June

---

[13] *Woodard v Custer*, 476 Mich 545, 565; 719 NW2d 842 (2006), quoting MCL 600.2169(1)(b) (alterations in original).

[14] *Kiefer v Markley*, 283 Mich App 555, 558; 769 NW2d 271 (2009) (quotation marks and citation omitted).

[15] *Woodard*, 476 Mich at 560.

[16] *Kiefer*, 283 Mich App at 559.

28, 2009, and forward, Dr. Goren spent 90% of his professional time in the aforementioned practice.[17]

Because Dr. Goren's testimony established that he spent a majority his professional time in the practice or instruction of the relevant specialty during the year preceding the malpractice, which satisfied the requirements of MCL 600.2169(1)(b), the trial court did not abuse its discretion in denying defendants' motions to strike Dr. Goren's testimony.[18]

## III. CAUSATION AND DAMAGES

Defendants also contend that plaintiff failed to provide any evidence that defendants' alleged negligence was the cause in fact of any injury suffered by plaintiff. We disagree.

## A. DIRECTED VERDICT AND JNOV

Defendants assert that plaintiff's failure to provide evidence of causation and damages required the trial court to grant defendants' motions for a directed verdict or JNOV. Again, we disagree.

"This Court reviews de novo a trial court's decision on a motion for a directed verdict."[19] Similarly, this Court "reviews de novo a trial court's decisions regarding motions for JNOV."[20] When considering motions for directed verdict or JNOV, "[t]he appellate court is to review the evidence and all legitimate inferences in the light most favorable to the nonmoving party."[21] "Only if the evidence so viewed fails to establish a claim as a matter of law, should the motion be granted."[22]

"A plaintiff in a medical malpractice action must establish '(1) the applicable standard of care, (2) breach of that standard of care by the defendant, (3) injury, and (4) proximate causation

---

[17] Defendants do not allege on appeal, like they did before the trial court, that Dr. Goren's practice in his alleged subspecialty of cornea and external disease does not constitute the practice or instruction of ophthalmology. Further, even if defendants had argued that Dr. Goren's practice in the field of cornea and external disease made him unqualified to testify, their argument would be meritless because the record is absent of any evidence that "cornea and external disease" is a subspecialty in which one could become board certified. *Woodard*, 476 Mich at 562. Thus, Dr. Goren's specialty was properly considered ophthalmology. See *id*.

[18] See *Kiefer*, 283 Mich App at 559.

[19] *Conlin v Upton*, 313 Mich App 243, 254; 881 NW2d 511 (2015).

[20] *Hecht v Nat'l Heritage Academies, Inc*, 499 Mich 586, 604; 886 NW2d 135 (2016).

[21] *Id*. (quotation marks and citation omitted).

[22] *Id*. (quotation marks and citation omitted).

between the alleged breach and the injury.' "[23]  "In an action alleging medical malpractice, the plaintiff has the burden of proving that he or she suffered an injury that more probably than not was proximately caused by the negligence of the defendant or defendants."[24]

" 'Proximate cause' is a legal term of art that incorporates both cause in fact and legal (or 'proximate') cause."[25]  "In order to establish that a particular action was the cause in fact of an injury, the plaintiff must show that 'but for' the defendant's actions, the plaintiff's injury would not have occurred."[26]  "Generally, an act or omission is a cause in fact of an injury only if the injury could not have occurred without (or 'but for') that act or omission."[27]  "While a plaintiff need not prove that an act or omission was the *sole* catalyst for his injuries, he must introduce evidence permitting the jury to conclude that the act or omission was *a* cause."[28]  The Court in *Craig* provided the following pertinent discussion regarding cause in fact:

> It is important to bear in mind that a plaintiff cannot satisfy this burden by showing only that the defendant *may* have caused his injuries.  Our case law requires more than a mere possibility or a plausible explanation.  Rather, a plaintiff establishes that the defendant's conduct was a cause in fact of his injuries only if he set[s] forth specific facts that would support a reasonable inference of a logical sequence of cause and effect.  A valid theory of causation, therefore, must be based on facts in evidence.  And while [t]he evidence need not negate all other possible causes, this Court has consistently required that the evidence exclude other reasonable hypotheses with a fair amount of certainty.[29]

In sum, "[t]he statutory and common-law background provided above makes it clear that a plaintiff's prima facie case of medical malpractice must draw a causal connection between the defendant's breach of the applicable standard of care and the plaintiff's injuries."[30]

In order to establish cause in fact, plaintiff was required to "set[] forth specific facts that would support a reasonable inference of a logical sequence of cause and effect" connecting the retention of the lenses to plaintiff's injuries.[31]  Defendants assert that plaintiff failed to provide

---

[23] *Elher v Misra*, 499 Mich 11, 21; 878 NW2d 790 (2016), quoting *Locke v Pachtman*, 446 Mich 216, 222; 521 NW2d 786 (1994).

[24] MCL 600.2912a(2).

[25] *Craig v Oakwood Hosp*, 471 Mich 67, 86; 684 NW2d 296 (2004).

[26] *Taylor v Kent Radiology*, 286 Mich App 490, 511; 780 NW2d 900 (2009) (quotation marks and citation omitted).

[27] *Craig*, 471 Mich at 87.

[28] *Id*.

[29] *Id*. at 87-88 (quotation marks and citations omitted; alteration in original).

[30] *Id*. at 90.

[31] See *id*. at 87 (quotation marks and citation omitted).

any evidence that the issues she suffered during the relevant 13 months were not caused by her myriad of other issues with her right eye. When considering the evidence in the light most favorable to her and resolving all inferences in favor of the jury's verdict, as we must, we are satisfied that plaintiff fulfilled her burden.[32]

Dr. Goren testified at trial that defendants breached the standard of care by failing to evert or double evert plaintiff's upper right eye lid, or to sweep the upper right fornix which would have resulted in the discovery of the retained bandage contact lenses. Defendants' failure to do so resulted in the two bandage contact lenses being in plaintiff's right eye for more than 13 months. He testified that defendants breached the standard of care by failing to identify and remove the two retained lenses. Further, plaintiff testified that the placement of the lens caused her to feel something in her right eye that she had never felt before. Thus, a reasonable juror could infer that at least some of plaintiff's complaints were not the result of her previous maladies. Additionally, the testimony of plaintiff, Dr. Ryan, and Dr. C. Cukrowski, along with medical records established that plaintiff did not have chronic infections in her eye before placement of the contact lenses, but did so afterward. From that evidence and the testimony of Dr. Goren that the retained lenses would be a nidus of infection, a reasonable juror could infer that the infections were caused by the retained contact lenses.

The inference is further supported by Dr. John's testimony that there were bacteria on the lenses and that she treated plaintiff for an infection after their removal. Thus, a reasonable juror could infer that defendants' breaches caused plaintiff's infections. A reasonable juror also could infer that the retention of the bandage contact lenses caused plaintiff pain and irritation, based on Dr. John's testimony that she discovered giant papillae in a cobblestone formation under plaintiff's upper right eye lid and Dr. Goren's testimony that only the presence of contact lenses could have caused that condition.

In sum, by "set[ting] forth specific facts that would support a reasonable inference of a logical sequence of cause and effect" connecting the retention of the lenses to her injuries, plaintiff provided sufficient evidence for a reasonable juror to determine that the cause in fact and injury elements of a medical malpractice claim were fulfilled.[33] Thus, because plaintiff did not fail to establish a claim as a matter of law, defendants' motions for directed verdict and JNOV were properly denied.[34]

## B. MOTION FOR A NEW TRIAL

Defendants also argue that the trial court abused its discretion by refusing to vacate the jury's verdict and have a new trial because the verdict was against the great weight of the evidence. We disagree.

---

[32] *Hecht*, 499 Mich at 604.

[33] See *Craig*, 471 Mich at 87 (quotation marks and citation omitted).

[34] *Hecht*, 499 Mich at 604.

"This Court . . . reviews for an abuse of discretion the trial court's decision to grant or deny motions for a new trial . . . ."[35] "A trial court does not abuse its discretion when its decision falls within the range of principled outcomes."[36]

> This Court may overturn a jury verdict that is against the great weight of the evidence. But a jury's verdict should not be set aside if there is competent evidence to support it. Determining whether a verdict is against the great weight of the evidence requires review of the whole body of proofs. The issue usually involves matters of credibility or circumstantial evidence, but if there is conflicting evidence, the question of credibility ordinarily should be left for the fact-finder. Similarly, the weight to be given to expert testimony is for the jury to decide.[37]

Defendants rely on the same argument in support of the contention that there was no evidence to establish causation and injury. But for the reasons already explained, there was sufficient evidence for a jury to determine that defendants' negligence was the cause in fact of plaintiff's injuries. Because the jury's decision was necessarily based on the weight it provided to lay and expert witness testimony and was sufficiently supported by admissible evidence in the record, the trial court did not abuse its discretion in determining that the jury's verdict was not against the great weight of the evidence.[38]

## C. REMITTITUR

Finally, defendants argue the trial court abused its discretion by denying their motions for remittitur. We disagree.

"We review for an abuse of discretion a trial court's decision whether to grant a motion for remittitur."[39] "A trial court does not abuse its discretion when its decision falls within the range of principled outcomes."[40] As with motions for directed verdict and JNOV, "[w]hen reviewing a trial[] court's decision regarding remittitur, this Court must view the evidence in the light most favorable to the nonmoving party."[41] The trial court "may consider whether the

---

[35] *Rental Props Owners Ass'n of Kent Co v Kent Co Treasurer*, 308 Mich App 498, 531; 866 NW2d 817 (2014).

[36] *Rock*, 499 Mich at 260.

[37] *Dawe v Bar-Levav & Assoc (On Remand)*, 289 Mich App 380, 401; 808 NW2d 240 (2010) (citations omitted).

[38] See *id*.

[39] *Local Emergency Fin Assistance Loan Bd v Blackwell*, 299 Mich App 727, 740; 832 NW2d 401 (2013).

[40] *Rock*, 499 Mich at 260.

[41] *Diamond v Witherspoon*, 265 Mich App 673, 693; 696 NW2d 770 (2005).

verdict was the result of improper methods, prejudice, passion, partiality, sympathy, corruption, or mistake of law or fact, whether it was within the limits of what reasonable minds would deem to be just compensation for the injury inflicted, and whether the amount actually awarded is comparable to other awards in similar cases."[42] "[A]wards for personal injury should rest within the sound judgment of the trier of fact, particularly awards for pain and suffering . . . ."[43] The Michigan Supreme Court has "recognize[d] that there is no absolute standard by which to measure such awards."[44] "In a case tried to a jury, such deference may further reflect a reliance on the communal judgment of the members of the jury in awarding monetary compensation for such imponderables as pain and suffering."[45]

The trial court did not abuse its discretion in finding that the evidence supported the jury's verdict. Defendants assert that the jury verdict was excessive because there was no evidence to support any damages or causation; thus, according to defendants, the jurors must have acted out of sympathy for plaintiff. As discussed earlier, when viewing the evidence in the light most favorable to plaintiff, defendants are incorrect. The trial court determined that the evidence in question supported the jury's verdict, and absent any indication that the jury acted out of sympathy or that similar jury awards have been much lower, we will not disturb the trial court's decision and will instead rely "on the communal judgment of the members of the jury in awarding monetary compensation for such imponderables as pain and suffering."[46]

The Ryan defendants also argue that the trial court abused its discretion by denying their motion for remittitur of the economic damages, which the jury ordered Dr. Ryan to pay alone. While acknowledging that plaintiff submitted proof of payment of a multitude of medical bills, the Ryan defendants insist that there was no evidence connecting their alleged negligence with those bills, so the jury's verdict must have erroneously relied on the jury's sympathy for plaintiff. Again, the record supports the jury's determination that some of plaintiff's injuries were caused by the Ryan defendants' negligence. The Ryan defendants provided no argument regarding how the medical bills should have actually been tabulated, what bills were and were not accrued due to their negligence, and what the proper total economic damages should have been. Given the Ryan defendants' failure in this regard, we will not disturb the trial court's decision that the evidence admitted at trial supported the jury's verdict for economic damages.[47]

---

[42] *Id*. at 694.

[43] *Precopio v Detroit*, 415 Mich 457, 464; 330 NW2d 802 (1982).

[44] *Id*. at 464-465.

[45] *Id*. at 465.

[46] *Precopio*, 415 Mich at 465. See also *Palenkas v Beaumont Hosp*, 432 Mich 527, 531; 443 NW2d 354 (1989). We are not persuaded by the Cukrowski defendants' citation to settlement amounts in purportedly similar factual circumstances, because we are required to consider any "prejudice, passion, partiality, sympathy, corruption, or mistake of law or fact" of the *jury* – not two parties that reached a mutually agreeable resolution. *Diamond*, 265 Mich App at 694.

[47] See *Precopio*, 415 Mich at 465; *Diamond*, 265 Mich App at 694.

## IV. CONCLUSION

In sum, the trial court did not commit any error in denying defendants' motions to strike Dr. Goren's testimony and affidavit of merit, for a directed verdict, or for post-judgment relief.

Affirmed.

/s/ Michael J. Talbot
/s/ Stephen L. Borrello