# STATE OF MICHIGAN

# COURT OF APPEALS

JASON TURKISH,

Plaintiff-Appellant,

v

WILLIAM BEAUMONT HOSPITAL,

Defendant-Appellee.

UNPUBLISHED
December 13, 2018

No. 339522
Oakland Circuit Court
LC No. 2015-147273-NH

Before: O'BRIEN, P.J., and TUKEL and LETICA, JJ.

PER CURIAM.

Plaintiff appeals by leave granted[1] the trial court's order denying his motion in limine to preclude defendant's expert witness from giving standard-of-care testimony in this medical malpractice action. We affirm.

On August 7, 2011, plaintiff fell and fractured his right knee. He went to defendant hospital and was released with crutches and a knee immobilizer. He returned the following day because of increased pain and was admitted under the care of Dr. Gregory Nowinski, M.D., an orthopedic surgeon. Plaintiff was taking Coumadin because of a suspected right lower leg deep vein thrombosis (DVT), commonly known as a blood clot. Dr. Nowinski discontinued plaintiff's Coumadin while he considered whether to perform surgery on plaintiff's knee. Dr. Nowinski chose not to perform surgery, and resumed plaintiff's Coumadin 22 hours after it had been discontinued. Plaintiff was thereafter diagnosed with DVT, and he filed this action alleging that the 22-hour Coumadin "hold" caused the DVT.

Plaintiff filed a motion in limine to preclude Dr. Laith Farjo, M.D., defendant's orthopedic expert, from offering standard-of-care testimony. Plaintiff argued that, according to

---

[1] *Turkish v William Beaumont Hosp*, unpublished order of the Court of Appeals, entered September 20, 2017 (Docket No. 339522).

-1-

Dr. Farjo's testimony, he spent the majority of his professional time practicing sports medicine—a subspecialty of general orthopedics—and therefore, Dr. Farjo was not qualified to offer standard-of-care testimony pertaining to orthopedic surgery.

In his deposition, Dr. Farjo testified that he is board-certified in orthopedic surgery and fellowship trained in sports medicine. He completed his sports medicine fellowship in 1999 but never became board certified. When questioned by plaintiff's counsel, Dr. Farjo further testified:

*A.* I have a full-time practice in orthopedic surgery. I take care of patients of all ages, from one to 101, but primarily sports medicine, which is usually ligamentous injuries of the shoulder and knee and then also the hip. I do deal with fractures as well.

*Q.* I saw somewhere in the materials that I reviewed that about 70 percent of your practice is laparoscopic sports medicine surgeries and the balance would be more general open procedures?

*A.* It's probably even more so arthroscopic at this point.

*Q.* Has that been the case for the past ten years or so?

*A.* Yes.

\* \* \*

*Q.* Doctor, on direct examination you testified that the majority of your practice is sports medicine?

*A.* Sports medicine encompasses a pretty wide variety of treatment. I said, I take care of people from 1 to 101. So, yes, sports medicine in that I take care of ligaments that are damaged and tendons that are torn, so I would say more than 50[%] is that.

*Q.* And do you hold yourself out as a sports medicine specialist?

*A.* I do.

*Q.* And you [have] done that for a number of years?

*A.* Yes.

*Q.* You were doing that since receiving your board certification in orthopedics?

-2-

*A.* Yes, it's common in orthopedics to have a specialty interest and so I do hold myself out to that.

*Q.* And sports medicine is now a board-recognized subspecialty of orthopedics?

*A.* Correct.

When questioned by defense counsel, Dr. Farjo clarified that his practice included more general orthopedic surgery. He testified as follows:

*Q.* So back in the time frame at issue, August of 2011, did you devote the majority of your professional time to the active clinical practice as a board-certified orthopedic surgeon?

*A.* Yes.

*Q.* The same specialty as Dr. Nowinski?

*A.* Yes.

*Q.* And you were asked questions by plaintiff's counsel at the beginning of your deposition about your fellowship that you had previously performed. You performed that fellowship from 1998 to 1999, a fellowship in sports medicine and arthroscopy at – in Virginia with Drs. Caspari J. Meyers, et al; is that right?

*A.* Yes.

*Q.* But your practice over the years has been as a board-certified orthopedic surgeon; is that right?

*A.* Yes.

*Q.* And, in fact, your CV indicates the various types of work that you perform which includes a great deal of arthroscopic; is that right?

*A.* Yes.

*Q.* And if surgery had actually been performed on [plaintiff] back in August of 2011 or even the subsequent surgery that was performed later that year, is that the type of surgery that you performed on many occasions?

*A.* Yes.

\* \* \*

*Q*. Doctor, you're not subspecialty certified in sports medicine, correct?

*A*. Correct.

*Q*. And you never have been, correct?

*A*. Correct.

*Q*. What you have is a special interest in sports medicine within the rubric of a board-certified orthopedic surgeon; is that correct?

*A*. Correct. I'd say probably a majority of orthopedic surgeons would say they have an interest in sports medicine.

*Q*. So plaintiff's counsel is trying to suggest that you're not really and were not really practicing and devoting the majority of your professional time as a board-certified orthopedic surgeon back in this time frame that would be relevant, August 2010 to August 2011. Back in that time frame what type of patients were you seeing, what type of practice did you have as a board-certified orthopedic surgeon?

*A*. So – well, I would see people with knee ligament injuries and shoulder rotator cuff tears which is considered part of the purvey of general orthopedics as well as sports medicine. I took care of 90-year-old ladies with a broken hip surgically, people who had broken their ankles surgically, I did and I still do hand surgery, so people with carpal tunnel syndrome, people with trigger fingers, people with tendinitis. I take care of people with dislocated kneecaps which this patient had, so it's a pretty wide variety. . . .

*Q*. And the statue [sic] in Michigan requires that the year immediately preceding the treatment at issue that an expert be board-certified in actively devoting the majority of his or her professional time to the same practice of medicine as the defendant in this case or the doctor whose treatment is being alleged, which would be Dr. Nowinski, is that something you did? Did you devote the majority of your professional time to that same practice of board-certified orthopedic surgery during that period of time?

[Objection by plaintiff's counsel omitted]

*A*. The answer to your question is absolutely. So, in orthopedic surgery, we all take care of these problems. It's –you know, I don't have a – I don't hold myself out as only a sports specialist and I haven't opted to take that special

-4-

certification exam.  You have the option to take that exam.  My understanding is even if you took the exam most people who do that still practice general orthopedic surgery.

> *Q.*  And that's what you do and have done since you become [sic] a board-certified orthopedic surgeon; is that right?

> *A.*  Yes.

Following oral argument during which the trial court took the matter under advisement, the court entered a written order denying plaintiff's motion.  The order stated as follows:

> After reviewing the Briefs and Exhibits and having considered the merits and being fully advised in the premises, the Court finds that Dr. Farjo is qualified to testify as to the standard of care.  Based upon the evidence submitted there is no valid basis under MCL 600.2169 to preclude him from offering the testimony because Dr. Farjo is a Board-certified Orthopedic Surgeon who has devoted the majority of his professional time to the active clinical practice as such.

On appeal, plaintiff argues that the trial court abused its discretion in denying its motion in limine to preclude Dr. Farjo from giving standard-of-care testimony.  We disagree.

This Court reviews a trial court's decision on a motion in limine for an abuse of discretion.  *Bellevue Ventures, Inc v Morang-Kelly Investment, Inc*, 302 Mich App 59, 63; 836 NW2d 898 (2013).  This Court also reviews a trial court's ruling regarding the qualifications of a proposed expert witness for an abuse of discretion.  *Woodard v Custer*, 476 Mich 545, 557; 719 NW2d 842 (2006).  "An abuse of discretion occurs when the decision results in an outcome falling outside the principled range of outcomes."  *Id*.  Questions of statutory interpretation are reviewed de novo.  *Id.* at 557.

In a medical malpractice action, the plaintiff must prove: "(1) the applicable standard of care, (2) breach of that standard by defendant, (3) injury, and (4) proximate causation between the alleged breach and the injury."  *Cox v Hartman*, 322 Mich App 292, 299; 911 NW2d 219 (2017).  Generally, expert testimony is necessary to establish the applicable standard of care as well as the defendant's breach of that standard.  *Id*. at 300.  MCL 600.2169, which governs the criteria for an expert witness in a medical malpractice action, provides, in relevant part:

> (1) In an action alleging medical malpractice, a person shall not give expert testimony on the appropriate standard of practice or care unless the person is licensed as a health professional in this state or another state and meets the following criteria:

-5-

(a) If the party against whom or on whose behalf the testimony is offered is a specialist, specializes at the time of the occurrence that is the basis for the action in the same specialty as the party against whom or on whose behalf the testimony is offered. However, if the party against whom or on whose behalf the testimony is offered is a specialist who is board-certified, the expert witness must be a specialist who is board-certified in that specialty.

(b) Subject to subdivision (c), during the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to either or both of the following:

(*i*) The active clinical practice of the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed and, if that party is a specialist, the active clinical practice of that specialty.

In *Woodard,* 476 Mich at 560, the Michigan Supreme Court held that, under MCL 600.2169(1), "the plaintiff's expert witness must match the one most relevant standard of practice or care—the specialty engaged in by the defendant physician during the course of the alleged malpractice, and, if the defendant physician is board-certified in that specialty, the plaintiff's expert must also be board-certified in that specialty." The Court further held that "a 'specialty' is a particular branch of medicine or surgery in which one can potentially become board-certified." *Id*. at 561. Therefore, "if the defendant physician practices a particular branch of medicine or surgery in which one can potentially become board-certified, the plaintiff's expert must practice or teach the same particular branch of medicine or surgery." *Id*. at 561-562. Moreover, "a 'subspecialty' is a particular branch of medicine or surgery in which one can potentially become board-certified that falls under a specialty or within the hierarchy of that specialty," and is also considered a specialty. *Id*. at 562. The Court also stated that, under MCL 600.2169(1)(a), "the proposed expert witness must have the same board certification as the party against whom or on whose behalf the testimony is offered." *Id*. at 562-563 (citation and quotation marks omitted). The Court held the following:

in order to be qualified to testify under § 2169(1)(b), the plaintiff's expert witness must have devoted a majority of his professional time during the year immediately preceding the date on which the alleged malpractice occurred to practicing or teaching the specialty that the defendant physician was practicing at the time of the alleged malpractice, i.e., the one most relevant specialty. [*Id*. at 566.]

In *Hamilton v Kuligowski*, the companion case to *Woodard*, the defendant physician was board-certified in general internal medicine and was practicing general internal medicine at the time of the alleged malpractice. *Id*. at 556. The proposed expert witness was also board-certified in general internal medicine. *Id*. However, the proposed expert devoted a majority of his professional time treating infectious diseases, a subspecialty of internal medicine, and

explicitly testified that he is "not sure what the average internist sees day in and day out." *Id.* at 578. Thus, the Court held that the proposed expert did not satisfy the practice requirement of MCL 600.2169(1)(b) because the defendant physician specialized in general internal medicine and was practicing general internal medicine at the time of the alleged malpractice, and the proposed expert did not. *Id.* at 577-578. Rather, the proposed expert spent a majority of his professional time treating infectious diseases and was unfamiliar with the day-to-day practice of a general internist. *Id.*

In this case, there is no dispute that Dr. Farjo satisfied the requirement of MCL 600.2169(1)(a). During the relevant period, Dr. Nowinski was a board-certified orthopedic surgeon, and Dr. Farjo was also a board-certified orthopedic surgeon as well as fellowship trained in sports medicine. At issue in this case is the practice requirement of MCL 600.2169(1)(b). Plaintiff contends that because Dr. Nowinski testified that he was practicing general orthopedic surgery when he treated plaintiff and Dr. Farjo testified that he practiced the subspecialty of sports medicine, Dr. Farjo was not qualified to give standard-of-care testimony under MCL 600.2169(1).

Orthopedic surgery is a "medical specialty concerned with the preservation, restoration, and development of form and function of the musculoskeletal system, extremities, spine, and associated structures by medical, surgical, and physical methods." *Stedman's Medical Dictionary* (26th ed). Once a physician becomes board-certified in orthopedic surgery, he or she may apply for additional subspecialty certifications from the American Board of Medical Specialties, one of which is sports medicine. See American Board of Medical Specialties, *Specialty and Subspecialty Certificates* https://www.abms.org/member-boards/specialty-subspecialty-certificates/ (accessed November 5, 2018). The American Board of Medical Specialties defines sports medicine as "[t]he surgical and medical care for all structures of the musculoskeletal system directly affected by participation in sporting activity." *Id.* It is undisputed that Dr. Nowinski was practicing orthopedic surgery at the time of the alleged malpractice. Thus, if Dr. Farjo devoted a majority of his professional time during the year preceding the alleged malpractice to sports medicine, a subspecialty of orthopedic surgery, Dr. Farjo did not satisfy the practice requirement under MCL 600.2169(1)(b). See *Woodard*, 476 Mich at 577-578.

Based on the evidence before it, the trial court found that Dr. Farjo met the practice requirement and was qualified to give standard-of-care testimony under MCL 600.2169(1)(b). Several times throughout his deposition, Dr. Farjo testified that the majority of his practice was dedicated to general orthopedic surgery. Early in the deposition, when asked if he "devote[d] the majority of [his] professional time . . . to the active clinical practice as a board-certified orthopedic surgeon . . . the same specialty as Dr. Nowinski," Dr. Farjo unequivocally answered "yes." He also testified that he has performed the surgery at issue in this case several times and was able to describe, in detail, the practice of an orthopedic surgeon. Accordingly, this case is

unlike *Hamilton*, in which the proposed expert, who testified that he was "not sure what an average internist sees," was clearly not practicing internal medicine. *Woodard,* 476 Mich at 558.

Plaintiff's argument focuses almost entirely on Dr. Farjo's testimony on direct-examination where he stated he spent a majority of his time practicing sports medicine. Plaintiff contends that Dr. Frajo's subsequent testimony on cross-examination should not be considered because it was just an effort by defense counsel to "rehabilitate Dr. Farjo and qualify him as an expert." However, Dr. Farjo's testimony that he spent the majority of his practice in sports medicine is not conclusive of what he was actually practicing during the relevant period, particularly where he described sports medicine, both on direct and cross-examination, as encompassing "a pretty wide variety of treatment" including treating "knee ligament injuries and shoulder rotator cuff tears," which as Dr. Farjo stated, "is considered part of the purvey of general orthopedics as well as sports medicine." While Dr. Farjo's testimony regarding his practice of sports medicine versus general orthopedic surgery seemed to be contradictory or unclear at times, he sufficiently clarified his testimony at the end of his deposition when he testified that he "absolutely" devoted a majority of his professional time to the practice of board-certified orthopedic surgery during the relevant time period. He also explained that he did not opt to take the special certification examination in sports medicine and that even with respect to those persons who are certified in sports medicine, they still practice general orthopedic surgery. Moreover, as the above definitions show, both sports medicine and orthopedic surgery deal with problems related to the "musculoskeletal system." Indeed, defense counsel's questioning on cross-examination could have been merely an attempt to clarify Dr. Farjo's qualifications due to the significant overlap of sports medicine and orthopedic surgery.

In conclusion, the trial court had sufficient evidence before it to conclude that Dr. Farjo practiced the same specialty as Dr. Nowinski—orthopedic surgery—and so its finding that Dr. Farjo spent a majority of his professional time practicing in the specialty of orthopedic surgery in the year preceding the alleged malpractice was within the range of reasonable and principled outcomes. *Woodard,* 476 Mich at 560.[2] Accordingly, the trial court did not abuse its discretion

---

[2] The dissent is concerned that this case is analogous to *Hamilton*, namely because it would conclude that Dr. Farjo "devoted a majority of his professional time to a subspeciality regardless of any overlap" with the more general practice. While we understand the dissent's concern, we disagree that the evidence necessitates concluding that Dr. Farjo devoted a majority of his professional time to sports medicine. To the contrary, Dr. Farjo's testimony conflicted on that point; he said that he spent a majority of his professional time practicing orthopedic surgery, and contradicted himself by saying that he spent a majority of his time practicing sports medicine. Both statements could not be true, and so the trial court had to credit one. It decided that that Dr. Farjo spent the majority of his time practicing orthopedic surgery. This was a close question, as Dr. Farjo's testimony supported both that he did—and that he did not—spend a majority of his

by finding that Dr. Farjo was qualified to give standard-of-care testimony under MCL 600.2169(1).

Affirmed. Defendant, as the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Colleen A. O'Brien
/s/ Jonathan Tukel

---

professional time practicing orthopedic surgery. "A decision on a close evidentiary question ordinarily cannot be an abuse of discretion." See *Morales v State Farm Mut Auto Ins Co*, 279 Mich App 720, 729; 761 NW2d 454 (2008).